In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00041-CR
______________________________


ORIAN LEE SCOTT, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 20462


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N
            As an employer, and benefactor, Orian Lee Scott seemed too good to be true. The three
teenaged boys Scott hired to perform household chores, such as yard work, painting, and bathing his
dogs, were paid extremely well—ten dollars per hour each—were occasionally given gifts, and
would often be treated to dinner and a movie after a day's work on the condition they get "cleaned
up" before going out. Many times over many months, the three boys complied and took showers in
Scott's guest bathroom, often masturbating while in the curtain-less shower. Scott was so
openhanded that, while the boys were taking their showers, they were often still on the clock. Little
did they know, they were also being videotaped by a camera hidden in the bathroom clock.
            From this series of events, Scott was charged with, and convicted of, nine different
charges—three charges relative to each of the three boys. In each of three indictments, one per boy,
the State brought one count of inducing a sexual performance by a child, one count of producing or
promoting a sexual performance by a child, and one count of possession of child pornography.


 
Overruling Scott's motion to sever the offenses, the trial court proceeded in a single prosecution. 
Scott pled guilty to the three counts of possessing child pornography. A jury found him guilty of the
three charges of inducing a sexual performance by a child and of the three charges of producing or
promoting a sexual performance by a child. For each conviction of inducing a sexual performance,
Scott was sentenced to twenty years, a total of sixty years' confinement. For each production
conviction, he was sentenced to ten years, a total of thirty years. Finally, for the three convictions
for possessing child pornography, he was sentenced to a total of ten years. The trial court stacked
the sentences, resulting in a combined sentence of 100 years. Scott now appeals, challenging the
sufficiency of the evidence to prove the "induce" element of the offenses charged, the consolidation
of the trial on all offenses, the reasonableness of the search yielding physical evidence against him,
and the stacking of the sentences.
            While we find the search valid and the physical evidence admissible, we reverse and render
Scott's conviction on Count One of each indictment, because we find the evidence legally
insufficient to prove Scott induced any of the boys to engage in sexual conduct. We reverse and
remand for a new trial Scott's conviction on Count Two of each indictment, and we reverse and
remand for a new punishment trial the charges for possession of child pornography, because we find
the trial court's refusal to sever the trial of each Count Two from Count Three, to which Scott had
pled "guilty," was harmful error—affecting the conviction on each Count Two and affecting the
punishment on each Count Three.
            Below, we (1) provide the factual background, (2) discuss the validity of the search,
(3) discuss the legal insufficiency of the evidence to prove Scott induced the boys' sexual conduct,
and (4) discuss the failure to sever each Count Two from its associated Count Three.
 
 
(1)       Factual Background
            A. H. and D. H., fourteen-year-old twin brothers, started working for Scott in August 2003,
initially helping him move in, and were each paid $10.00 per hour. After Scott was moved in, the
boys did other work around the house. Scott asked the brothers if they had a friend who could help
them. The brothers asked J. P., their fifteen-year-old friend, who agreed to work with them. After
summer ended, the three boys continued to work, mostly on weekends, about eight hours a day. 
            Scott provided the boys swim trunks to work in so they would not "ruin" their clothes. Early
on, Scott began to suggest the boys shower after having bathed the dogs or spread ant poison. Scott
routinely offered to take the boys to dinner and a movie if they got "cleaned up" in the guest
bedroom.


 The boys took several showers during the months they worked for Scott, despite the fact
that there was no shower curtain. 
            In March 2004, the boys were playing on Scott's computer—they said with his
permission—and discovered some photographs of young nude males in suggestive poses. The boys
went to authorities, and an investigation by the Lamar County Sheriff's Department ensued. Based
on his interviews with the complainants and the mother of two of the complainants, Detective Travis
Rhodes obtained a search warrant. The resulting search of Scott's house yielded child pornography
on Scott's computer and also revealed that he had been secretly videotaping the boys' showers
through use of a camera hidden in a digital clock in the bathroom.
            Each boy testified at trial, admitting to masturbating frequently while in the shower. Each,
however, made it clear that Scott never offered him money to masturbate in the shower, never
encouraged him to do so, never threatened or coerced him into doing so, and never even asked him
to do so. The boys testified that they did not know of the videotaping and that it was done without
their consent. 
(2)       The Search Was Valid
            Scott filed a pretrial motion to suppress December 6, 2004. Asserting that the boys did not
have permission to be on the computer, Scott sought to suppress evidence found on his computer.


 
 He also argued that, since Rhodes already knew about the presence of safes on the premises, Rhodes
should have included such information in his affidavit. Since Rhodes did not, argues Scott, the
search warrant did not authorize search of the locked safe in the laundry room in which the officers
found the videotapes. The trial court heard and overruled Scott's motion. 
            A search is unreasonable and violates the protections of the Fourth Amendment if it exceeds
the scope of the authorizing warrant. U.S. Const. amend. IV; see Long v. State, 532 S.W.2d 591,
596 (Tex. Crim. App. 1975); DeMoss v. State, 12 S.W.3d 553, 558 (Tex. App.—San Antonio 1999,
pet. ref'd). While the scope of the search warrant is governed by its terms, the search may be as
extensive as is reasonably required to locate items described in the warrant. U.S. Const. amend. IV;
Haynes v. State, 475 S.W.2d 739, 741–42 (Tex. Crim. App. 1971). A container that may conceal
the object of a search authorized by warrant may be opened immediately. See United States v. Ross,
456 U.S. 798, 823 (1982); see also United States v. Giwa, 831 F.2d 538, 543–44 (5th Cir. 1987)
("any container situated within residential premises which is the subject of a validly-issued warrant
may be searched if it is reasonable to believe that the container could conceal items of the kind
portrayed in the warrant").



            If an appellant challenges the scope of the search because of the location where the items
were found, the officer must show that he or she was properly in the place where the item was found,
either on basis of the search warrant or under the authority of an exception to the warrant
requirement. Snider v. State, 681 S.W.2d 60, 62–63 (Tex. Crim. App. 1984); Swink v. State, 747
S.W.2d 53, 54 (Tex. App.—Texarkana 1988, no pet.). To illustrate what the record must show when
an appellant advances such a challenge, we look to DeMoss. In a search for an illegal cable box, the
officer executing the search warrant in DeMoss did not exceed the scope of the warrant when he
searched a shoebox found in a bedroom of the residence specified in the warrant and when he
testified that a smaller portion of the cable box could have fit into the box.


 DeMoss, 12 S.W.3d at
558. 
            The search warrant issued to Rhodes authorized him to search "[a] single family dwelling
located at Rt. 1 Box 130-D Brookston, Texas . . . located on county road 34300 5/10 of a mile south
of FM38 on the eastside of the county road" including "all other buildings, structures, places and
vehicles on said premises and within the curtilage . . . which may reposit or secrete property which
is the object of the search requested herein." The search warrant authorized the search for "[a]ny still
photos, digital photos, videotapes, DVD'S [sic], MP3[,] or audio recordings" and "[a]ny device or
equipment capable of producing and/or storing still photos, digital photos[,] and video." 
            Rhodes testified that D. H. did tell him there were two safes located in the house. Rhodes
further testified that he based his search for videotapes and recording devices on the complainants'
statements regarding Scott's comments to them about him secretly recording people in the past and
that the safe was a sufficient size to house videotapes. Regardless of whether Rhodes already knew
about the safe, the warrant authorized the search of the laundry room and, more specifically, the safe
found in the laundry room that contained the videotapes of the complainants taking showers. 
Rhodes's testimony shows he was properly in the place where the item was found.
            Likewise, the seizure of Scott's computer was authorized by the search warrant. The boys
told Rhodes they did have permission to be on the computer when they discovered the photographs
of nude boys. A. H. testified they were allowed to use it "many" times. Scott failed to prove the
boys were not rightfully on the computer when they discovered the materials. Therefore, he failed
to support his position that the material found on the computer should have been excluded. See Tex.
Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). We conclude that the seizure of the items in
question pursuant to the search warrant was lawful and that the trial court properly overruled Scott's
motion to suppress.
(3)       The Evidence Was Legally Insufficient To Prove that Scott Induced Sexual Conduct
            Scott contends the evidence is legally and factually insufficient to prove he induced the boys
to engage in sexual conduct. He concedes that he induced the boys to take showers, but maintains
that such inducement is insufficient to constitute an offense under Section 43.25 of the Texas Penal
Code. Because a legal sufficiency challenge, if sustained, results in an acquittal rather than a retrial,
we must consider this issue first. See Clewis v. State, 922 S.W.2d 126, 132 (Tex. Crim. App. 1996)
(en banc); State v. Mercier, 164 S.W.3d 799, 812 (Tex. App.—Corpus Christi 2005, no pet.).
            A person commits an offense if, knowing the character and content thereof, he or she
employs, authorizes, or induces a child younger than eighteen years of age to engage in sexual
conduct or a sexual performance. Tex. Pen. Code Ann. § 43.25(b).


 "Sexual conduct" means
sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality,
masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion
of the female breast below the top of the areola. Tex. Pen. Code Ann. § 43.25(a)(2) (Vernon Supp.
2004–2005); Alexander v. State, 906 S.W.2d 107, 109 (Tex. App.—Dallas 1995, no pet.). "Sexual
performance" means any performance or part thereof that includes sexual conduct by a child younger
than eighteen years of age. Tex. Pen. Code Ann. § 43.25(a)(1) (Vernon Supp. 2004–2005);
Alexander, 906 S.W.2d at 109.
            The State charged Scott with allegations of inducing a sexual performance by the three
complainants:
did then and there intentionally or knowingly, knowing the character and content
thereof, induced a child younger than 18 years of age, to-wit: [each complainant], to
engage in sexual conduct or a sexual performance, to-wit actual lewd exhibition of
the genitals or the anus, or masturbation.

(Emphasis added.)
            In the absence of a statutory definition, words are to be taken and understood in their
common and ordinary meanings. Williams v. State, 674 S.W.2d 315, 322 (Tex. Crim. App. 1984);
Alexander, 906 S.W.2d at 111. Since the term "induce" is not defined by the Texas Penal Code, we
must adopt the word's meaning in common usage. Tex. Gov't Code Ann. § 311.011(a) (Vernon
2005). To "induce" is "to lead or move by persuasion or influence, as to some action or state of
mind" or "to bring about, produce, cause." Random House Dictionary of the English
Language 975 (2d ed. 1987). Black's Law Dictionary defines "inducement" as "[t]he act or process
of enticing or persuading another to take a certain course of action." Black's Law Dictionary 790
(8th ed. 2004). We now turn to look at cases which illustrate the term "induce."
            One induces a child to engage in sexual conduct if he or she instructs the child to disrobe and
engage in simulated sexual intercourse with a nude female child. Foty v. State, 755 S.W.2d 195
(Tex. App.—Houston [14th Dist.] 1988, no pet.). Foty photographed the two children in various
sexual positions and in a variety of settings both inside and outside his house. Id.
            Another man admitted taking photographs of a young girl nude from the waist down with her
legs spread and a close-up photograph of the girl's genitalia, but he argued that he had taken the
photographs to document suspected sexual abuse of the girl, a defense which the jury rejected. See
Garay v. State, 954 S.W.2d 59, 62 (Tex. App.—San Antonio 1997, pet. ref'd). The appellate court
held that the admissions and photographs alone were sufficient evidence to support the inducement
charges. Id. at 66.
            Still another individual challenged the sufficiency of the State's proof of the inducement
element of this offense. Dorval v. State, No. 03-03-00570-CR, 2004 Tex. App. LEXIS 6813, at *2–3
(Tex. App.—Austin July 29, 2004, no pet.) (not designated for publication). The appellate court held
that a rational trier of fact could conclude beyond a reasonable doubt that the complainant was
persuaded or prevailed on to engage in the sexual performance by Dorval's repeated requests, his
promise not to touch her, and his assurance that the videotape would belong to her. Id.
            The Corpus Christi Court of Appeals recently addressed the limits of the term "induce" as
used by Section 43.25(b). See Dornbusch v. State, 156 S.W.3d 859, 866–68 (Tex. App.—Corpus
Christi 2005, no pet.). That court determined that Section 43.25(b)'s use of the term "induce" was
not unconstitutionally vague as applied to Dornbusch's alleged conduct. Id. at 867. The record
showed that Dornbusch held a position of authority at the complainant's school, that Dornbusch
provided the complanaint with alcohol, that he took her to a motel out of town during the school day,
and that he made unsolicited sexual advances while at the motel jacuzzi. Id. Since the complainant
was supposed to be at school and was, instead, miles away having consumed alcohol, the court
concluded Dornbusch had put her in a position in which she found it almost impossible to deny a
sexual advance. Id. Such conduct, held the court, fell within the common understanding of the term
"induce." Id. The Dornbusch court concluded that the evidence established Dornbusch used
persuasion and influence to bring about the complainant's sexual conduct and, thus, was legally
sufficient to prove inducement. Id. at 868. The evidence was also held to be factually sufficient to
support the jury's verdict. Id. The complainant's testimony that she was not offered money or grades
in exchange for sexual conduct, that she was not intoxicated, that she was not threatened, and that
she knowingly consented to the sexual conduct did not outweigh the evidence that Dornbusch
induced the sexual conduct by putting the complainant in the above-detailed situation. Id. The
statute does not require that any benefit be provided in exchange for the sexual conduct, nor does
the common meaning of the term "induce" require such an exchange. Id. Similarly, neither the
statute nor the generally understood meaning of "induce" requires that the inducement be verbal and
explicit. Id. Dornbusch was careful to distinguish the term "induce" from the term "force." Id.
            We review the legal sufficiency of the evidence by viewing the relevant evidence in the light
most favorable to the verdict and determining whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. See Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000). While the evidence shows that the boys' masturbation


 would have fallen
into the definition of sexual performance, on this record, there is no direct link between any
inducement from Scott—requests, good wages, dinner, entertainment, and gifts—and the boys'
masturbation. All three boys testified that Scott never coerced, encouraged, or even asked them to
masturbate in the shower. Scott did encourage them to take a shower, but he did not encourage them
to masturbate. In the relatively few cases addressing this offense, most, if not all, have involved
sexual conduct or a sexual performance of which the child victim was aware. The boys testified 
they were unaware they were being videotaped while in the shower.
            The State argues that, since Scott had already videotaped the boys in the shower and knew
that they were likely to engage in masturbation, Scott's encouragement and bribery of the boys to
take a shower is the functional equivalent of inducing the actual act of masturbation. It would appear
that there has been an increasing reach of this provision from Foty to Dornbusch, but finding the
evidence sufficient here would expand the statute beyond its plain meaning and beyond our
understanding of the Legislature's intent in passing it.
            Scott's inducement must relate to the specific sexual conduct at which the statute is aimed. 
That is, inducing the boys to take a shower does not violate the statute. Indeed, it is the masturbation
that satisfies the sexual conduct element of the offense. It is this specific conduct which must be
induced in order to violate the statute. Put another way, when looking at whether the facts of any
given case constitute "inducement" in its ordinary meaning, the focus must be on what, if anything,
Scott did to bring about, persuade, or encourage the boys' masturbation.
            It is contrary to the ordinary meaning of the word "induced" to conclude that Scott used
"persuasion or influence" to"lead" the boys to masturbate when there was no direct inducement and
the boys were not aware they were being observed. By all accounts, the boys did not know Scott was
videotaping them while they were in the shower. Each testified that Scott never mentioned
masturbation to them, and A. H. testified that he would have refused any request by Scott to
masturbate. 
            Scott did induce the boys to take a shower and then capitalized on the boys' tendencies to
masturbate by recording them for his own gratification. We do not minimize the wrong committed
against these young people; the record clearly supports a finding that Scott wronged these boys. 
However, on these facts, the offense was not one of inducement of a sexual performance or sexual
conduct as contemplated by Section 43.25(b).


 As D. H. testified, "he induced me to be around the
environment to do that." While probably an accurate statement, it does not amount to the offense
charged here. We sustain Scott's first point of error, concluding that, on these facts, the evidence was
legally insufficient to prove that Scott induced the boys to masturbate. We reverse the judgment of
conviction and render a judgment of acquittal on Count One of each indictment. See Flores v. State,
139 S.W.3d 61, 64 (Tex. App.—Texarkana 2004, pet. ref'd).
            Having concluded that the evidence was legally insufficient to support the conviction, we
proceed to Scott's other points of error, with the understanding that Scott is subject to conviction only
for the remaining offenses: production or promotion of a sexual performance by a child and
possession of child pornography.



(4)       As to Each Indictment, Refusal To Sever Count II from Count III Was Harmful Error
            On November 22, 2004, more than thirty days before trial, the State filed its notice of
consolidation. See Tex. Pen. Code Ann. § 3.02(b) (Vernon 2003). Before trial, Scott responded
and filed a motion to sever Count III from Counts I and II in each indictment.


 After hearing
arguments, the trial court denied the motion to sever and allowed the State to proceed on the
consolidated causes. 
            A defendant may be prosecuted in a single criminal action for all offenses arising out of the
same criminal episode. Tex. Pen. Code Ann. § 3.02 (Vernon 2003); see also Tex. Code Crim.
Proc. Ann. art. 21.24 (Vernon 1989). The accused may rely on Section 3.04, however, and seek
a severance of the offenses:
(a) Whenever two or more offenses have been consolidated or joined for trial
under Section 3.02, the defendant shall have a right to a severance of the offenses.
 
(b) In the event of severance under this section, the provisions of Section 3.03
do not apply, and the court in its discretion may order the sentences to run either
concurrently or consecutively.
 
(c) The right to severance under this section does not apply to a prosecution
for offenses described by Section 3.03(b)(2) unless the court determines that the
defendant or the state would be unfairly prejudiced by a joinder of offenses, in which
event the judge may order the offenses to be tried separately or may order other relief
as justice requires.

Tex. Pen. Code Ann. § 3.04 (Vernon 2003). When a defendant timely requests severance under
Section 3.04(a), his or her right to a severance is absolute and severance is mandatory. See Coleman
v. State, 788 S.W.2d 369, 371 (Tex. Crim. App. 1990). A motion to sever must be raised before
trial. See Thornton v. State, 986 S.W.2d 615, 617 (Tex. Crim. App. 1999).
            By its own terms, Section 3.04(a) does not apply to offenses falling under Section 3.03(b)(2),
including offenses involving sexual performance by a child under Section 43.25. Therefore, Scott
was not entitled to a mandatory severance of Count I from Count II. Since Counts I and II involve
Section 3.03(b)(2) offenses, Scott would bear the burden of showing that he "would be unfairly
prejudiced by a joinder of offenses." See Tex. Pen. Code Ann. § 3.04(c). Section 3.04(c)'s
exception does not, however, apply to an offense under Section 43.26 for possession of child
pornography. Therefore, on his timely request, Scott was entitled to a mandatory severance of Count
III from Counts I and II in each indictment. See Tex. Pen. Code Ann. § 3.04(a); Coleman, 788
S.W.2d at 371.
            Error surrounding a trial court's failure to grant a mandatory severance under Section 3.04(a)
is subject to harm analysis. Llamas v. State, 12 S.W.3d 469, 470 (Tex. Crim. App. 2000). We must
disregard any error that does not affect Scott's substantial rights. See Tex. R. App. P. 44.2(b). 
Everything in the court reporter's record is data from which we can analyze harm. See Llamas, 12
S.W.3d at 471. The Texas Court of Criminal Appeals has directed Texas courts "[t]o judge the
likelihood that harm occurred [by] consider[ing] everything in the record including all the evidence
admitted at trial, the closing arguments, and, in this case, the jurors' comments during voir dire." Id.
            The State relies on Dominguez v. State, 62 S.W.3d 203, 206–08 (Tex. App.—El Paso 2000,
pet. ref'd), to support its position that error, if any, in failing to sever the trial on all counts was
harmless. The Dominguez trial court refused to sever the trial on allegations of unlawful possession
of a controlled substance and failure to stop and render aid, offenses which are markedly different
than those before us.


 Id. at 205. The appellate court recognized that, on his timely request,
Dominguez was entitled to a severance of the offenses and that the trial court erred by refusing to
grant the severance. Id. at 206. The court concluded, however, that evidence of each of the crimes
would have been admissible in a separate trial of the other offense as "same transaction contextual
evidence." Id. at 208 (citing Rogers v. State, 853 S.W.2d 29, 32–34 (Tex. Crim. App. 1993 ).) Since
the jury would have heard "the same evidence regardless of whether the offenses were tried
separately in different trials or together in one," the court concluded it was harmless error to refuse
to sever the offenses. Id.
            The Waco Court of Appeals recently decided a case similar in some respects to the one
before us. See Wheat v. State, 160 S.W.3d 631, 634 (Tex. App.—Waco 2005, no pet.). Wheat was
charged with two counts of indecency with a child against two complainants and one count of sexual
assault of one of those complainants. Id. at 632. Wheat pled "guilty" to both counts of indecency
with a child and "not guilty" to the allegations of sexual assault of a child. Id. Each offense was a
Section 3.03(b)(2) offense, meaning Section 3.04(c) would require Wheat to prove he was "unfairly
prejudiced" by the joinder of the three offenses. The court held that the trial court abused its
discretion by refusing to sever the counts to which Wheat pled "guilty." Id. at 637. Wheat was
unfairly prejudiced on the sexual assault allegation by the unauthorized bifurcated trial on the two
"guilty" pleas. Id. at 636–37; see also Tex. Code Crim. Proc. Ann. art. 26.14 (Vernon 1989);
Ricondo v. State, 634 S.W.2d 837, 841 (Tex. Crim. App. 1982). The court pointed out that the
consolidation affected what defensive theory Wheat could advance at trial. Wheat, 160 S.W.3d at
636. The court also suggested the possibility that defense counsel could have prevailed on objections
to the admission of any evidence relating to those two offenses in a separate trial on the sexual
assault charges. Id.
            Relying on the principles expressed in Dominguez, the State argues that, even if trial of the
allegations in each Count III should have been severed in the instant cases, any error is harmless
since all evidence related to Count III would probably have been admissible in trial of Counts I and
II either as "same transaction contextual evidence" or as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident under Tex. R. Evid. 404(b). 
See Dominguez, 62 S.W.3d at 208 (citing Rogers, 853 S.W.2d at 32–34); see also Tovar v. State, 165
S.W.3d 785, 795 (Tex. App.—San Antonio 2005, no pet.). 
            Dominguez does not address all of our concerns in the case at bar, however, since that case
involved joinder of only offenses to which the defendant had pled "not guilty." Here, of course, the
trial proceeded on charges to which Scott had pled "guilty" and others to which he pled "not guilty." 
Dominguez does remain helpful in its illustration of the harm analysis required when dealing with
a trial court's refusal to grant a motion for mandatory severance under Section 3.04(a). 
            In Wheat, we see another distinction: Wheat was convicted of three offenses, all of which
fell under Section 3.04(c)'s discretionary severance provision as well. In the instant case, since
Counts III, alleging possession of child pornography, did not fall under Section 3.03(b)(2),
discretionary severance under Section 3.04(c) is not the issue as it was in Wheat. The allegations
pending against Scott put him squarely within the mandatory severance provision of Section 3.04(a)
with respect to Count III. That being the case, on Scott's timely request for severance, the trial court
was required to sever each Count III. However, Wheat remains valuable to our discussion in that it
analyzes the impact or prejudice of trying a defendant for an offense to which he or she pled "guilty"
with an offense to which he or she pled "not guilty."
            After reviewing the entire record to determine whether the appellant was harmed by the
failure to grant mandatory severance, the Llamas court noted the record in that case showed that, no
less than five times during voir dire, veniremembers commented in front of the entire jury panel that
they were concerned that Llamas had two charges against him. Llamas, 12 S.W.3d at 472 (quoting
and affirming the observations of the intermediate appellate court in Llamas v. State, 991 S.W.2d
64, 69 (Tex. App.—Amarillo 1998)). The court pointed out that these concerns constitute "exactly
the type of harm that [S]ection 3.04 allows a criminal defendant, in his sole and absolute discretion,
to choose to avoid." Id. (again quoting the observations of the lower court). That being the case, the
court could not be sure that the error in refusing mandatory severance did not have a substantial or
injurious effect on the jury's verdict. Id. 
            Similarly, we note the comments made during voir dire by defense counsel when the panel
learned of Scott's plan to plead "guilty" to possession of child pornography:
[DEFENSE COUNSEL]:Does anybody here had [sic] a son, daughter, grandson or granddaughter that has been the victim of any type of sexual assault r sexual abuse that might make you feel like you could not serve on this jury? 
What's your number?
 
JUROR:18.
 
[DEFENSE COUNSEL]:Could you tell me about that?
 
JUROR:Family members.
 
[DEFENSE COUNSEL]:Was that your son or daughter?
 
JUROR:Yes.
 
[DEFENSE COUNSEL]:The fact that that happened to you, are
you going to hold that against Mr. Scott?
 
JUROR:Well, I got to ask you a question.
 
[DEFENSE COUNSEL]:Yes, sir.
 
                        JUROR:          You announced that he had possession of
pornographic material.
[DEFENSE COUNSEL]:Yes, I did say that.
 
JUROR:And that could entice young kids into an act.
 
[DEFENSE COUNSEL]:You're right.
 
                        JUROR:So, it is extremely hard to be able to stay focused on
it without hearing all the facts. But that one statement was awful
strong for the D.A. in my opinion.
 
[DEFENSE COUNSEL]:What number are you?
 
                        JUROR:28.
  
While the record is somewhat unclear as to which statements are attributable to Juror No. 18 and
which are attributable to Juror No. 28,


 it seems reasonably clear that both made similar comments
regarding the guilty plea. At a minimum, some veniremembers expressed some ideas associating
Scott's guilty plea with his guilt on the other charges, thereby exposing the entire panel to such ideas. 
We point out also that Juror No. 18 was on the convicting jury; Juror No. 28 was not. At any rate,
we find these comments likely indicative of the impact that a guilty plea may have on a juror
deliberating closely-related allegations.
            We add that an admission to possession of the videotapes of the showering boys bears
significantly on the allegations of production and promotion of a sexual performance of a child. In
its opening statement, the State seized on both the guilty plea itself and its close relation to the
production or promotion charges: 
He's already pled guilty to possession of child pornography, the videotapes of the
boys that he made. According to what I heard on voir dire, it doesn't really seem that
he has an argument over production of a sexual performance because he's the one that
made the videotapes, he's the one that did everything. He hasn't pled guilty to it but
I think the evidence is going to show that that is pretty strong.

The State similarly mentions the guilty plea during its closing argument to the jury: "Without
question he has pled guilty to possessing child pornography, so you sign that. Now, if you go to
count two, he hasn't really pled guilty to that, but he has conceded it under all the facts." The State
refers to Scott's guilty plea twice more in its rebuttal, at one point clearly associating the guilty plea
to the inducement charges as well:
He's already pled that he knew what was on these tapes. That's knowledge, that's
intent, that's conduct on his part to induce. Make no mistake about it. There is no
question about it.

The State's several references to and reliance on the guilty plea in its argument to the jury would
serve only to reinforce any of the ideas that the jurors had regarding the impact of Scott's guilty pleas
to Counts III. As did the Texas Court of Criminal Appeals in Llamas, we conclude the trial court's
failure to grant Scott's timely request for mandatory severance affected Scott's substantial rights.
            We also find persuasive the Waco court's analysis in Wheat because, although that case
involved discretionary severance under Section 3.04(c), it specifically addresses the impact of failure
to sever allegations to which a defendant pled "guilty." The court in Wheat was called on to
determine whether failure to grant discretionary severance of three counts, to two of which Wheat
pled "guilty," caused "unfair prejudice." Our inquiry is somewhat similar in that we must determine
whether the trial court's error in refusing mandatory severance of Counts III to which Scott pled
"guilty" had a "substantial or injurious effect on the jury's verdict." See Llamas, 12 S.W.3d at 472.
            Since here, as in Wheat, we cannot determine what strategy defense counsel would have
taken, we cannot conclude the trial court's failure to sever Scott's guilty pleas to each Count III is
harmless error. Now, it is not unheard of for defense counsel to utilize a strategy like the one defense
counsel here was forced to employ. That is, there may be a tactical advantage in admitting to the jury
that the appellant did commit some offense, but that the appellant is not guilty of another, often more
serious offense. Here, however, it seems clear from defense counsel's attempts to sever the child
pornography allegations that he would not have opted to employ such a strategy.
            While we acknowledge that there is evidence of Scott's guilt of the allegations of production
or promotion of a sexual performance by a child, we bear in mind at least two substantial rights—the
presumption of Scott's innocence and his right to a fair trial on Count II of each indictment—both
substantial rights in terms of harm analysis. Both of these substantial rights were most likely
compromised by the trial court's failure to sever each Count III. Therefore, we sustain Scott's point
of error and reverse and remand for a new trial as to each Count II. See Tex. Code Crim. Proc.
Ann. art. 44.29(a) (Vernon Supp. 2004–2005). In connection with each Count III, Scott's "guilty"
plea is unaffected by the failure to sever.


 He is, however, entitled to a new trial on punishment



relating to his "guilty" pleas. See Tex. Code Crim. Proc. Ann. art. 26.14; art. 44.29(b) (Vernon
Supp. 2004–2005); Wheat, 160 S.W.3d at 637.
Conclusion
            The search was valid and the physical evidence was admissible. But, since there is legally
insufficient evidence to sustain Scott's conviction for inducing a sexual performance of a child, we
reverse the trial court's judgment of conviction and render a judgment of acquittal as to Count I in
each indictment. Since we cannot disregard the trial court's error in its failure to sever each Count
III pursuant to the mandatory severance provision of Section 3.04(a), we reverse the convictions as
to each Count II, sever each Count III from the associated Count II, and remand the cause for a new
guilt/innocence trial on each Count II and a new punishment trial on each Count III. Tex. Code
Crim. Proc. Ann. art. 44.29; see Wheat, 160 S.W.3d at 637.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          July 13, 2005
Date Decided:             September 8, 2005

Publish