**John Perry DORNBUSCH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–02–700–CR.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Jan. 27, 2005.

Rehearing Overruled March 24, 2005.

William J. McCarthy, Eaton & McCarthy, Mc Allen, for appellant.

Amy Howell Alaniz, Asst. Dist. Atty., Theodore C. Hake, Asst. Criminal Dist. Atty., Edinburg, for appellee.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and GARZA.

## OPINION

Opinion by Justice GARZA.

Appellant, John Perry Dornbusch, appeals his conviction for one count of inducing sexual conduct by a child. *See* Tex. Pen.Code Ann. § 43.25(b) (Vernon Supp. 2004–05). Because we conclude that section 43.25(b) of the Texas Penal Code is not unconstitutionally vague and the evidence is legally and factually sufficient to support the conviction, we affirm. *See id.*

## I. Facts

The offense in question allegedly occurred on December 8, 2000. At the time, Dornbusch was a band director at Hidalgo High School in Hidalgo, Texas. He was charged by indictment with three counts of inducing sexual conduct by a child and pled not guilty to all three counts.

At trial, Dornbusch and the State presented very different accounts of what happened on December 8, 2000. According to the State, Dornbusch persuaded two female students, V.V. and J.R., to run errands with him during school hours. The two girls, both seventeen-year-old seniors, had skipped their after lunch classes and were hanging out in the band hall. V.V. and J.R. both testified that Dornbusch, who was working in his office located in the band hall, invited them to accompany him in his new pick-up truck to collect some band instruments. They agreed and joined him, first driving to a middle school in McAllen, Texas and then to a music store. Next, Dornbusch went to a convenience store and purchased sodas and alcoholic beverages for them. He then drove to a motel in Pharr, Texas. Both girls claimed that Dornbusch was the one who suggested getting a motel room, telling the

girls, "We only live once." V.V. testified that she and J.R. just looked at each other without responding: "We didn't say yes or no."

The two girls described the motel room, which was equipped with a hot tub. J.R. testified that the two of them undressed in the bathroom and got into the hot tub wearing towels from the motel, while Dornbusch got into the tub completely naked. Dornbusch teased the girls for wearing towels, which they then removed. According to both girls, Dornbusch then began touching their genitalia. He took J.R. to the bed and attempted to perform oral sex on her. When she closed her legs to prevent him from doing so, Dornbusch allowed J.R. to return to the hot tub and guided V.V. to the bed, where he performed oral sex on her. Afterward, the three of them left the motel. Dornbusch dropped J.R. off at her home around 4 p.m. and then returned to the high school with V.V.

Several witnesses verified various parts of the girls' testimony. The clerk at the motel, Beth Hamill, identified Dornbusch in court as the man to whom she had rented the hot tub room at 2:11 p.m. According to Hamill, the man had identified himself as "James Ferris" and paid for the room in cash without showing identification.

Marshall Doherty, the owner of the motel, testified that a registration card was filled out by a man matching Dornbusch's description on December 8, 2000. He also testified to having picked Dornbusch's picture out of the faculty photographs from a Hidalgo High School yearbook when asked by a school investigator to identify the man who rented the room.

Kenneth Crawford, a handwriting expert, identified at least thirteen similarities between the handwriting on the registration card and Dornbusch's handwriting,

but he could not conclude with scientific certainty that Dornbusch had filled out the card.

Irma Molina, the principal of Hidalgo High School, testified that she took statements from both V.V. and J.R. regarding the events in question. She also had both girls separately draw diagrams of the motel and the motel room. She testified that the diagrams drawn by the girls corresponded to the layout of the actual motel and the hot tub room rented by "James Ferris."

Domenica Salinas, who lived with J.R. at the time, saw Dornbusch drive to J.R.'s house around 4 p.m. in a blue pick-up truck and watched J.R. enter the house.

Dr. Daniel King, the school superintendent, directed much of the school's investigation into the allegations against Dornbusch. He testified to having received a copy of the registration card from the motel and discovering that the first six digits of the driver's license number on the card were identical to the first six digits of Dornbusch's license (only the last two numbers were different). He also noted that the post office box number on the registration card was the same as Dornbusch's mail box number, though the cities were different. Dr. King also obtained videotapes from school security cameras for the day in question. They showed Dornbusch's truck entering the school parking lot at 4:11 p.m. and Dornbusch entering the band hall shortly thereafter accompanied by an unidentified female. The tapes were admitted as evidence.

Dornbusch testified to a very different version of events. He denied being with the girls on December 8 and denied having any sexual contact with either of them. Dornbusch testified that he left school after 1 p.m. and met his mother at home.

They went to lunch together from approximately 2:30 to 3:30 p.m. He then ran errands until around 4 p.m., when he returned to campus. One of the errands was to check on instruments being repaired at a music store. Dornbusch's mother, Frances Ann Dornbusch, provided corroborative testimony. In addition, Dornbusch's wife testified that he was at home at 2:30 p.m. because he called her from their home phone at that time. As evidence of these events, Dornbusch produced copies of a check made out to the restaurant where he and his mother ate lunch, cell phone records for the day in question, and invoices from an instrument repair shop he allegedly visited that afternoon. Upon deliberation, the jury found Dornbusch guilty of one count for inducing V.V. to engage in oral sex on December 8, 2000. Dornbusch was sentenced to two years' imprisonment, suspended for a term of two years' community supervision.

Dornbusch now raises ten issues on appeal; however, as several of the issues are either repetitive or interrelated, we restate them as follows:[1] (1) section 43.25(b) of the Texas Penal Code, under which Dornbusch was convicted, is void because it is unconstitutionally vague; (2) there was legally and factually insufficient evidence to support the jury's finding of "inducement" or "knowing the character and content thereof"; (3) Dornbusch's conviction violates the legislature's intent that section 43.25(b) apply only in the context of commercial, pornographic sexual performances; (4) there was factually insufficient evidence to support the motel clerk's in-court identification of Dornbusch; and (5) the trial court erred by denying Dornbusch's motion for a directed verdict because there was legally and factually insufficient evidence to support the conviction.

1. *See* TEX.R.APP. P. 47.1.

## II. Constitutionality of Penal Code Section 43.25

Dornbusch contends that section 43.25(b) is unconstitutionally vague and therefore void. *See id.* He argues that his conviction under section 43.25(b) violates his rights to due process and due course of law under the constitutions of the United States and Texas. *See id.*

The language of section 43.25(b) is as follows: "A person commits an offense if, knowing the character and content thereof, he employs, authorizes, or induces a child younger than 18 years of age to engage in sexual conduct or a sexual performance." *Id.*[2] Dornbusch argues that the terms "induce" and "knowing the character and content thereof" are unconstitutionally vague because they fail to provide fair notice of the proscribed conduct and create the potential for arbitrary and selective law enforcement. *See id.* We will review the constitutionality of the statute to address these due process and due course of law concerns, and to avoid repetition, we will also decide Dornbusch's challenges to the legal and factual sufficiency of the evidence on the elements of "inducement" and "knowing the content and character thereof." *See id.*

■ When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature did not act unreasonably or arbitrarily in enacting it. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex.Crim.App.2002); *see also* TEX. GOV'T CODE ANN. § 311.021 (Vernon 1998). The burden is on appellant to prove the statute is unconstitutional. *See Rodriguez*, 93 S.W.3d at 69. The statute must be upheld if it can be reasonably construed as constitutional. *Brenneman v. State*, 45 S.W.3d 729, 732 (Tex.App.-Corpus Christi 2001, no pet.).

Dornbusch contends that section 43.25(b) is vague on its face within the meaning of the due process clause. *See* § 43.25(b). To prevail, Dornbusch must first show that the statute is unconstitutional as applied to him. *See Brenneman*, 45 S.W.3d at 732.

■ A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden or if it encourages arbitrary and erratic arrests and convictions. *Id.* A statute is not vague or indefinite merely because some of its words or phrases are not specifically defined. *Id.* A statute provides fair notice to citizens and adequate guidelines for law enforcement if it "communicates its reach in words of common understanding." *State v. Markovich*, 77 S.W.3d 274, 280 (Tex.Crim.App.2002) (citing *Boos v. Barry*, 485 U.S. 312, 322, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988)).

### A. Inducement

#### 1. Unconstitutional Vagueness

■ We begin with the word "induce." *See* § 43.25(b). "Induce" is not defined by the penal code. *See id.* We adopt the word's meaning in common usage, *see* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998), which is "to move by persuasion or influence" or "to bring about by influence." WEBSTER'S COLLEGIATE DICTIONARY, 10th ed.1996.

---

**2.** "Sexual conduct" is separately defined as "sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, anus, or any portion of the female breast below the top of the areola." *See* TEX. PEN. CODE ANN. § 43.25(a)(2) (Vernon Supp.2004–05).

■ To decide Dornbusch's constitutional challenge, we must determine whether, in common understanding, Dornbusch's alleged conduct brought about V.V.'s sexual conduct through persuasion or influence. *See Markovich,* 77 S.W.3d at 280; *Brenneman,* 45 S.W.3d at 732. It is uncontested that Dornbusch was substantially older than V.V. Also, as an educator at her high school, Dornbusch was in a position of authority over V.V. According to the State's evidence, appellant requested that V.V. and J.R. accompany him on errands away from campus; provided the girls with alcohol, even though they were both minors; drove them to an out-of-town motel on his own initiative; urged them to undress and enter the hot tub with him; and made unsolicited sexual advances in the hot tub and on the motel room bed. In sum, Dornbusch constructed a situation in which V.V. was unlikely to have the ability to refuse his advances: she was miles away from school (where she was supposed to be) and her only alternative to acquiescing to Dornbusch's advances was to call someone to pick her up from an out-of-town motel, after she had consumed alcohol in the middle of a school day. We conclude that a scenario such as this, where a person of authority creates a situation in which a teenager would find it almost impossible to deny a sexual advance, can be fairly considered to constitute inducement in the common understanding of the term. *See Markovich,* 77 S.W.3d at 280.

We hold that the statute was not impermissibly vague as applied to Dornbusch's conduct. The statute forbids inducement of sexual conduct by a child under eighteen years of age, and according to the State's evidence, Dornbusch did exactly that: he induced (he used persuasion and influence to bring about) V.V.'s sexual conduct. *See* § 43.25(b).

■ Dornbusch maintains that no inducement occurred because he did not have sexual contact with V.V. and, in the alternative, if he did, he did not offer V.V. anything in exchange for the sexual contact; however, the statute does not require that any benefit be provided, nor is such a requirement inherent in the common understanding of the word "induce." *See id.* Dornbusch also argues that no inducement occurred because he did not explicitly discuss having sex with V.V. Again, nowhere in the statute, nor in the common understanding of the word, is there any requirement that inducement be verbal and explicit. *See id.* We conclude that Dornbusch's alleged actions constituted inducement in the commonly understood meaning of the word and the statute was not unconstitutionally vague with regard to his alleged conduct. *See Brenneman,* 45 S.W.3d at 732. We therefore overrule Dornbusch's constitutional challenge to the word "induce." [3]

### 2. Legal and Factual Sufficiency of the Evidence to Prove Inducement

■ We now turn to the legal and factual sufficiency of the evidence to prove inducement. When reviewing the legal sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99

---

**3.** Dornbusch also argues that section 43.25(b) is unconstitutionally vague because it encourages arbitrary and erratic arrests and convictions; however, his argument is made without any citations to legal authority or to the record. *See* TEX.R.APP. P. 38.1(h). It therefore presents nothing for this Court to review.

S.Ct. 2781, 61 L.Ed.2d 560 (1979). The fact finder is the exclusive judge of the credibility of witnesses and the weight of their testimony, and the reviewing court must therefore resolve any evidentiary conflicts in favor of its verdict. *See id.; Jones v. State,* 944 S.W.2d 642, 647 (Tex. Crim.App.1996).

■■■■ The factual sufficiency of the evidence is reviewed under a different standard. In a factual sufficiency analysis, all of the evidence (both for and against the verdict) is considered in a neutral light. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996). The reviewing court must determine whether the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust such that fairness demands that the verdict be overturned. *Rojas v. State,* 986 S.W.2d 241, 247 (Tex.Crim.App.1998); *Clewis,* 922 S.W.2d at 129. In conducting a factual sufficiency review, the court must be deferential to the existing verdict in order to avoid substituting its judgment for that of the fact finder, which maintains its role as the evaluator of the weight and credibility of testimony. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000).

We begin with legal sufficiency. Applying the commonly understood meaning of the word induce and reviewing the evidence in the light most favorable to the verdict, we conclude that the evidence was legally sufficient to support a finding of inducement. We base this conclusion on the same considerations that led us to conclude that section 43.25(b) was not impermissibly vague as applied to Dornbusch. *See* § 43.25(b). When viewed in the light most favorable to the verdict, the evidence previously discussed shows that Dornbusch used persuasion and influence to bring about V.V.'s sexual conduct. The evidence was therefore legally sufficient to prove inducement.

Turning to factual sufficiency, we note that Dornbusch both denies engaging in any sexual activity with V.V. and argues that V.V.'s story would not amount to inducement even if it were true. Specifically, Dornbusch argues that V.V.'s testimony proves there was no inducement because she stated that she was not offered money, grades, or favors in exchange for consenting to oral sex; she was not threatened; she knew what she was doing and gave her consent; she did not put up a fight or object to Dornbusch's advances; and she was not intoxicated when she engaged in the sexual conduct.

We disagree. The proof of guilt is not outweighed by the exonerative evidence cited by Dornbusch. Regardless of whether V.V. consented to the sexual conduct or if Dornbusch never promised her anything in return for sex, the evidence still shows that Dornbusch induced V.V.'s sexual conduct by using his position of authority to create a situation in which V.V. was afraid or unable to refuse his sexual advances. Dornbusch seems to read the word "induce" as meaning "force," but we do not equate the terms.

In addition, the evidence produced by Dornbusch to disprove the occurrence of the motel encounter does not outweigh the evidence favoring the verdict. Although Dornbusch provided an alibi that was corroborated by his mother's testimony and other evidence, there is overwhelming evidence in the record to support the State's version of events, including testimony from the motel's employees, the two students involved in the encounter, and various administrative personnel from the school. Accordingly, we conclude that the evidence was both legally and factually sufficient to support the verdict. Dornbusch's sufficiency challenges to the word "induce" are overruled.

## B. Knowing the Character and Content Thereof

### 1. Unconstitutional Vagueness

 Dornbusch also argues that section 43.25(b) is void because of the vagueness of the clause "knowing the content and character thereof." *See id.* Dornbusch argues that under the code construction act, the entire statute is presumed to be effective. *See* TEX. GOV'T CODE ANN. § 311.021(b). All words must be given effect and none can be treated as mere surplusage. *See Williams v. State*, 940 S.W.2d 802, 806 n. 4 (Tex.App.-Fort Worth 1997, pet. ref'd). According to Dornbusch, there is a problem with the phrase "knowing the character and content thereof" in section 43.25(b) because it is meaningless in non-pornographic or non-commercial settings such as his case. *See* § 43.25(b). As he puts it: "There is simply no situation in which a person who ... induces a person younger than eighteen to engage in sexual conduct would not know the character and content thereof. Thus, this phrase is surplusage or meaningless."

 We disagree. The phrase "knowing the character and content thereof" establishes the necessary *mens rea* of the offense and distinguishes section 43.25(b) from purely statutory offenses. *See id.; see also* TEX. PEN.CODE ANN. § 6.02(a) (Vernon 2003) (stating that a person does not commit an offense unless he intentionally, knowingly, recklessly or with criminal negligence engages in the proscribed conduct). The phrase precludes criminal culpability from arising unless the actor knows that the conduct induced is sexual in nature. Dornbusch has not demonstrated that this portion of the statute is unconstitutionally vague as applied to his actions. *See Brenneman*, 45 S.W.3d at 732. His issue is overruled.

### 2. Legal and Factual Sufficiency of the Evidence to Prove the Element of Knowing the Character and Content Thereof

 The standards of review for legal and factual sufficiency challenges are stated above, and we proceed without reiterating them. Dornbusch argues that no one can induce sexual conduct without knowing the character and content of the conduct induced. We understand this to mean that evidence sufficient to prove inducement will also prove the element of knowing the character and content thereof. We have already concluded that the evidence was both legally and factually sufficient to prove Dornbusch induced V.V.'s sexual conduct. According to Dornbusch's statement of the law, this evidence also proves that he knew the character and content of V.V.'s conduct.

There is no evidence that Dornbusch was incompetent or otherwise unable to understand the nature of the conduct he induced. Instead, the State's evidence tends to establish the opposite: Dornbusch was well aware that the conduct induced was sexual in nature. He purchased alcoholic beverages for the girls; rented a motel room with a hot tub; removed his clothes and entered the tub; had the girls do the same; and then led each naked girl to the bed, where he attempted to perform oral sex on both girls. We conclude that these actions establish the knowledge required by section 43.25(b). *See* § 43.25(b). Accordingly, the issue is overruled.

### III. Section 45.23(b) in a Non–Pornographic, Non–Commercial Context

 Dornbusch argues that section 45.23(b) was intended to apply only to sexual performances and conduct by minors occurring in pornographic, commercial settings. *See id.* He maintains that

by applying the statute to non-pornographic, non-commercial activity, the State and the trial court have violated the legislative intent of the statute.

■ The starting point in analyzing the meaning of a statute is the language of the statute itself. *Ex Parte Evans*, 964 S.W.2d 643, 646 (Tex.Crim.App.1998). When a statute is clear and unambiguous, this Court must apply the plain meaning of its words. *Id.; see also Hines v. State*, 75 S.W.3d 444, 447 (Tex.Crim.App.2002). When the words in a statute are ambiguous, or the application of the plain meaning of the words would lead to an absurd result which the legislature could not have intended, the court may look to extra-textual factors to ascertain the statute's meaning. *Evans*, 964 S.W.2d at 646. These factors include, among other matters, the object sought to be attained, circumstances under which the statute was enacted, legislative history, common law or law on similar subjects, consequences of a particular construction, and the title or caption of the statute. *See* Tex. Gov't Code Ann. § 311.023 (Vernon 1998).

Dornbusch was convicted under section 43.25(b) of the penal code for the inducement of sexual conduct by a child in a non-commercial setting. *See* § 43.25(b). He now claims this was an invalid application of the statute, which leads to an absurd result the legislature could not have intended. We disagree.

Section 43.25 was originally enacted in 1977 to address the absence of state law criminalizing the commercial sale, distribution, exhibition, or possession of pornography involving persons younger than seventeen years of age. *See* Acts 1977, 65th Leg., ch. 381, p. 1035, effective June 10, 1977. From 1977 to 1985, the statute simply stated that an offense occurred if a child was authorized, employed, or induced "to engage in a sexual performance." In 1985, the legislature amended the statute to read "to engage in *sexual conduct or* a sexual performance." *See* Acts 1985, 69th Leg., ch. 538, pp. 2133–34, effective Sept. 1, 1985 (emphasis added). Sexual conduct was defined in section 43.25(a) of the statute as a list of proscribed sexual activity. *See* § 43.25(a). The legislature again amended the statute in 1993 to change the definition of a child to persons younger than eighteen, rather than seventeen. *See* Acts 1993, 73rd Leg., ch. 900, pp. 3683–84, effective Sept. 1, 1994.

The post-amendment language of section 43.25(b) criminalizes the inducement of a child's sexual conduct regardless of whether it amounts to a sexual performance. *See* § 43.25(b). When the legislature added "sexual conduct" as an offense under the statute and defined sexual conduct so that it included sex acts without regard for their setting or context, it no longer limited the offense to the pornographic, commercial context. *See Summers v. State*, 845 S.W.2d 440, 442 (Tex.App.-Eastland 1992, no pet.). Various other courts have reached this conclusion, applying section 43.25(b) to conduct that was both private and non-commercial in nature. *See Chen v. State*, 42 S.W.3d 926, 931 (Tex.Crim. App.2001) (upholding conviction of defendant who attempted to induce child to engage in non-commercial sexual intercourse); *Ex Parte Anderson*, 902 S.W.2d 695, 697–98 (Tex.App.-Austin 1995, pet. ref'd) (allowing trial to proceed against defendant charged with inducing child to engage in masturbation and sado-masochistic abuse not described as pornographic or commercial); *Summers*, 845 S.W.2d at 441–42 (upholding conviction of defendant who attempted to induce child to engage in oral sex even though conduct was not a commercial "sexual performance").

We disagree with Dornbusch that the legislature intended for "sexual conduct" to mean only "child pornography exhibiting sexual conduct." *See* § 43.25(a). We find Dornbusch's interpretation of section 43.25(b) to be contrary to the plain language of the statute, its legislative history, and its interpretation by the courts of this state. *See* § 43.25(b).

 Dornbusch argues that his conviction will lead to absurd results, namely, inconsistency with section 21.11 of the Texas Penal Code, which defines indecency with a child as sexual contact with a child younger than seventeen years of age. *See* TEX. PEN.CODE ANN. § 21.11 (Vernon 2003). We disagree. Whether or not consensual sex with a seventeen-year-old is a crime under section 21.11 does not control the interpretation of an entirely different offense in a different section of the penal code. *See id.* Sections 21.11 and 43.25(b) are not in direct conflict and do not have to be considered together: section 21.11 does not legalize consensual sex with a seventeen-year-old; it merely does not allow such an act to be prosecuted as indecency with a child. *See id.;* § 43.25(b).

 Furthermore, section 21.11 is in the part of the penal code that criminalizes offenses against persons, whereas section 43.25 is in the part of the code that criminalizes offenses against the public decency and order. *See* §§ 21.11, 43.25(b). A helpful analogy can be drawn between inducement of sexual conduct by a child and prostitution. Both are offenses against the public decency and order. Prostitution is not a crime against the prostitute; it is an offense against the "public decency and order" because it violates the moral values of society. *See* TEX. PEN.CODE ANN. § 43.02 (Vernon 2003). Consequently, a prostitute's consent to sex in exchange for money does not make the conduct legal. It still amounts to prostitu-

tion. Similarly, although an adult's consensual sexual contact with a seventeen-year-old cannot be prosecuted as indecency with a child, the teenager's consent to sex does not de-criminalize the adult's conduct under section 43.25(b) because the adult's conduct is a crime against the public, not against the teenager. *See* §§ 21.11, 43.25(b).

Dornbusch argues that when considered together, sections 21.11 and 43.25(b) would allow an adult to have legal sex with a seventeen-year-old if the minor initiates the sexual conduct, while an adult who asks a seventeen-year-old for sex could be prosecuted for inducement. *See* §§ 21.11, 43.25(b). Dornbusch asserts that it is absurd for him to be convicted based on which party initially requested the sexual contact as long as both parties consented.

As a preliminary matter, the evidence does not indicate that Dornbusch was propositioned for sex. To the contrary, the evidence strongly indicates that Dornbusch initiated and induced the sexual conduct. Thus, the instant case does not require this Court to determine whether a criminal offense occurs if a minor initiates sexual contact with an adult. *See* TEX. R.APP. P. 47.1. Any such statement in this opinion would be dictum.

 It appears that Dornbusch has misread section 43.25(b), which criminalizes employing, inducing, or authorizing sexual conduct by a minor. *See* § 43.25(b). Whether an offense has occurred under section 43.25(b) does not turn on who initially requests sex; it depends on whether an adult knowingly employed, induced, or authorized sexual conduct by a minor. *See id.*

 Dornbusch further argues that a new law enacted after his conviction prohibiting educators from engaging in sexual activity with students serves as evidence

that, at the time of his arrest, no existing law prohibited an adult educator from engaging in consensual sex with a seventeen-year-old student. *See* TEX. PEN.CODE ANN. § 21.12 (Vernon Supp.2004–05). On close inspection, the new statute actually undermines Dornbusch's argument because it explicitly states that if "conduct constituting an offense under this section also constitutes an offense under another section of this code, an actor may be prosecuted under either or both sections." *Id.* The new statute thus allows for the possibility that other statutes may also create criminal liability for sexual activity between educators and consenting students, and it specifically authorizes simultaneous prosecution of offenses under the different statutes. *See id.* Even if this were not so, the enactment of subsequent statutes and the analysis of subsequent legislative histories regarding the subsequent statutes are not considered to be particularly relevant factors in a court's interpretation of an older statute. *See* TEX. GOV'T CODE ANN. § 311.023.

For the foregoing reasons, we conclude that section 43.25(b) applies to non-pornographic, non-commercial sexual conduct by children. *See* § 43.25(b). Dornbusch's issue is overruled.

### IV. Factual Sufficiency of In-Court Identification

■■■■ Dornbusch claims that his in-court identification by a motel employee was based on factually insufficient evidence to support the verdict. We have already stated the standard of review for factual sufficiency challenges. A proper factual sufficiency review should include a discussion of the most important and relevant evidence that supports an appellant's complaint on appeal. *Sims v. State,* 99 S.W.3d 600, 601 (Tex.Crim.App.2003).

■■ Dornbusch complains about the testimony of the motel desk clerk, who testified at trial that she was "100 percent sure" that Dornbusch was the man who rented the motel room on December 8. Dornbusch complains that the clerk had previously testified at an earlier proceeding that she was only "pretty sure" and "80 percent sure" that Dornbusch was the man who rented the room. Although there is some inconsistency between the clerk's in-court testimony and her prior testimony, the inconsistency does not render the evidence factually insufficient. The jury is the ultimate arbiter of the weight and credibility of the evidence, and it has the right to resolve conflicts in the testimony as it sees fit. *See* TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Clewis,* 922 S.W.2d at 133. The jury was entitled to believe the clerk's in-court testimony instead of her prior testimony. Given the absence of any evidence seriously undermining the clerk's in-court identification of Dornbusch, we have no basis to disturb the jury's finding. The issue is overruled.

### V. Legal and Factual Sufficiency of the Evidence

■■ In his final issue before the Court, Dornbusch argues that the trial court erred by denying his motion for a directed verdict because the evidence was legally and factually insufficient to support a conviction. Other than the elements of the offense separately briefed and previously discussed (i.e., inducement and knowing the character and content thereof), Dornbusch has failed to include any discussion, argument, or citations to authority regarding the legal and factual sufficiency of the evidence as to the other elements of the offense. Therefore, we need not address the legal and factual sufficiency of the evidence in any greater detail. *See* TEX. R.APP. P. 47.1. The issue is overruled.

## VI. Conclusion

The judgment of the trial court is affirmed.