

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-05-00041-CR
_____

ORIAN LEE SCOTT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 20462

Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss

# OPINION

As an employer, and benefactor, Orian Lee Scott seemed too good to be true. The three teenaged boys Scott hired to perform household chores, such as yard work, painting, and bathing his dogs, were paid extremely well—ten dollars per hour each—were occasionally given gifts, and would often be treated to dinner and a movie after a day's work on the condition they get "cleaned up" before going out. Many times over many months, the three boys complied and took showers in Scott's guest bathroom, often masturbating while in the curtain-less shower. Scott was so openhanded that, while the boys were taking their showers, they were often still on the clock. Little did they know, they were also being videotaped by a camera hidden in the bathroom clock.

From this series of events, Scott was charged with, and convicted of, nine different charges—three charges relative to each of the three boys. In each of three indictments, one per boy, the State brought one count of inducing a sexual performance by a child, one count of producing or promoting a sexual performance by a child, and one count of possession of child pornography.[1] Overruling Scott's motion to sever the offenses, the trial court proceeded in a single prosecution. Scott pled guilty to the three counts of possessing child pornography. A jury found him guilty of the three charges of inducing a sexual performance by a child and of the three charges of producing or promoting a sexual performance by a child. For each conviction of inducing a sexual performance, Scott was sentenced to twenty years, a total of sixty years' confinement. For each production

---

[1]See TEX. PEN. CODE ANN. §§ 43.25(b), 43.25(d) (Vernon Supp. 2004–2005), § 43.26 (Vernon 2003).

2

conviction, he was sentenced to ten years, a total of thirty years. Finally, for the three convictions for possessing child pornography, he was sentenced to a total of ten years. The trial court stacked the sentences, resulting in a combined sentence of 100 years. Scott now appeals, challenging the sufficiency of the evidence to prove the "induce" element of the offenses charged, the consolidation of the trial on all offenses, the reasonableness of the search yielding physical evidence against him, and the stacking of the sentences.

While we find the search valid and the physical evidence admissible, we reverse and render Scott's conviction on Count One of each indictment, because we find the evidence legally insufficient to prove Scott induced any of the boys to engage in sexual conduct. We reverse and remand for a new trial Scott's conviction on Count Two of each indictment, and we reverse and remand for a new punishment trial the charges for possession of child pornography, because we find the trial court's refusal to sever the trial of each Count Two from Count Three, to which Scott had pled "guilty," was harmful error—affecting the conviction on each Count Two and affecting the punishment on each Count Three.

Below, we (1) provide the factual background, (2) discuss the validity of the search, (3) discuss the legal insufficiency of the evidence to prove Scott induced the boys' sexual conduct, and (4) discuss the failure to sever each Count Two from its associated Count Three.

*(1)    Factual Background*

A. H. and D. H., fourteen-year-old twin brothers, started working for Scott in August 2003, initially helping him move in, and were each paid $10.00 per hour. After Scott was moved in, the boys did other work around the house. Scott asked the brothers if they had a friend who could help them. The brothers asked J. P., their fifteen-year-old friend, who agreed to work with them. After summer ended, the three boys continued to work, mostly on weekends, about eight hours a day.

Scott provided the boys swim trunks to work in so they would not "ruin" their clothes. Early on, Scott began to suggest the boys shower after having bathed the dogs or spread ant poison. Scott routinely offered to take the boys to dinner and a movie if they got "cleaned up" in the guest bedroom.[2] The boys took several showers during the months they worked for Scott, despite the fact that there was no shower curtain.

In March 2004, the boys were playing on Scott's computer—they said with his permission—and discovered some photographs of young nude males in suggestive poses. The boys went to authorities, and an investigation by the Lamar County Sheriff's Department ensued. Based on his interviews with the complainants and the mother of two of the complainants, Detective Travis Rhodes obtained a search warrant. The resulting search of Scott's house yielded child pornography

---

[2]A. H. testified that he did think it was a bit strange to get paid so much and also get dinner and a movie. Over the months, Scott also gave the boys small gifts such as binoculars, a camera, and an air pistol.

4

on Scott's computer and also revealed that he had been secretly videotaping the boys' showers through use of a camera hidden in a digital clock in the bathroom.

Each boy testified at trial, admitting to masturbating frequently while in the shower. Each, however, made it clear that Scott never offered him money to masturbate in the shower, never encouraged him to do so, never threatened or coerced him into doing so, and never even asked him to do so. The boys testified that they did not know of the videotaping and that it was done without their consent.

*(2)   The Search Was Valid*

Scott filed a pretrial motion to suppress December 6, 2004. Asserting that the boys did not have permission to be on the computer, Scott sought to suppress evidence found on his computer.[3] He also argued that, since Rhodes already knew about the presence of safes on the premises, Rhodes should have included such information in his affidavit. Since Rhodes did not, argues Scott, the search warrant did not authorize search of the locked safe in the laundry room in which the officers found the videotapes. The trial court heard and overruled Scott's motion.

A search is unreasonable and violates the protections of the Fourth Amendment if it exceeds the scope of the authorizing warrant. U.S. CONST. amend. IV; *see Long v. State*, 532 S.W.2d 591, 596 (Tex. Crim. App. 1975); *DeMoss v. State*, 12 S.W.3d 553, 558 (Tex. App.—San Antonio 1999,

---

[3]While neither the federal nor the state constitution require exclusion of evidence obtained by a *private* illegal search, Article 38.23 of the Texas Code of Criminal Procedure requires such evidence be excluded. *Cobb v. State*, 85 S.W.3d 258, 270–71 (Tex. Crim. App. 2002).

pet. ref'd). While the scope of the search warrant is governed by its terms, the search may be as extensive as is reasonably required to locate items described in the warrant. U.S. CONST. amend. IV; *Haynes v. State*, 475 S.W.2d 739, 741–42 (Tex. Crim. App. 1971). A container that may conceal the object of a search authorized by warrant may be opened immediately. *See United States v. Ross*, 456 U.S. 798, 823 (1982); *see also United States v. Giwa*, 831 F.2d 538, 543–44 (5th Cir. 1987) ("any container situated within residential premises which is the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant").[4]

If an appellant challenges the scope of the search because of the location where the items were found, the officer must show that he or she was properly in the place where the item was found, either on basis of the search warrant or under the authority of an exception to the warrant requirement. *Snider v. State*, 681 S.W.2d 60, 62–63 (Tex. Crim. App. 1984); *Swink v. State*, 747 S.W.2d 53, 54 (Tex. App.—Texarkana 1988, no pet.). To illustrate what the record must show when an appellant advances such a challenge, we look to *DeMoss*. In a search for an illegal cable box, the officer executing the search warrant in *DeMoss* did not exceed the scope of the warrant when he searched a shoebox found in a bedroom of the residence specified in the warrant and when he

---

[4]In an unpublished case, the Corpus Christi Court of Appeals came to a similar conclusion while reviewing convictions for aggravated sexual assault and possession of child pornography, holding that "ammunition box was within the scope of the search warrant as it was reasonable to believe that the box could contain photographs." *Heileman v. State*, Nos. 13-02-643-CR & 13-02-644-CR, 2004 Tex. App. LEXIS 4521, at *6 (Tex. App.—Corpus Christi May 20, 2004, no pet.) (not designated for publication).

6

testified that a smaller portion of the cable box could have fit into the box.[5] *DeMoss*, 12 S.W.3d at 558.

The search warrant issued to Rhodes authorized him to search "[a] single family dwelling located at Rt. 1 Box 130-D Brookston, Texas . . . located on county road 34300 5/10 of a mile south of FM38 on the eastside of the county road" including "all other buildings, structures, places and vehicles on said premises and within the curtilage . . . which may reposit or secrete property which is the object of the search requested herein." The search warrant authorized the search for "[a]ny still photos, digital photos, videotapes, DVD'S [sic], MP3[,] or audio recordings" and "[a]ny device or equipment capable of producing and/or storing still photos, digital photos[,] and video."

Rhodes testified that D. H. did tell him there were two safes located in the house. Rhodes further testified that he based his search for videotapes and recording devices on the complainants' statements regarding Scott's comments to them about him secretly recording people in the past and that the safe was a sufficient size to house videotapes. Regardless of whether Rhodes already knew about the safe, the warrant authorized the search of the laundry room and, more specifically, the safe found in the laundry room that contained the videotapes of the complainants taking showers. Rhodes's testimony shows he was properly in the place where the item was found.

---

[5]The shoebox did not contain a component of an illegal cable box. *DeMoss*, 12 S.W.3d at 558. Instead, the officer discovered pornographic pictures he believed to be child pornography, at which time he left to procure a second warrant authorizing a search for those items relating to child pornography. *See id.* Ultimately, DeMoss's convictions for aggravated sexual assault and inducing sexual performance were affirmed. *Id.* at 561.

Likewise, the seizure of Scott's computer was authorized by the search warrant. The boys told Rhodes they did have permission to be on the computer when they discovered the photographs of nude boys. A. H. testified they were allowed to use it "many" times. Scott failed to prove the boys were not rightfully on the computer when they discovered the materials. Therefore, he failed to support his position that the material found on the computer should have been excluded. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005). We conclude that the seizure of the items in question pursuant to the search warrant was lawful and that the trial court properly overruled Scott's motion to suppress.

*(3)      The Evidence Was Legally Insufficient To Prove that Scott Induced Sexual Conduct*

Scott contends the evidence is legally and factually insufficient to prove he induced the boys to engage in sexual conduct. He concedes that he induced the boys to take showers, but maintains that such inducement is insufficient to constitute an offense under Section 43.25 of the Texas Penal Code. Because a legal sufficiency challenge, if sustained, results in an acquittal rather than a retrial, we must consider this issue first. *See Clewis v. State*, 922 S.W.2d 126, 132 (Tex. Crim. App. 1996) (en banc); *State v. Mercier*, 164 S.W.3d 799, 812 (Tex. App.—Corpus Christi 2005, no pet.).

A person commits an offense if, knowing the character and content thereof, he or she employs, authorizes, or induces a child younger than eighteen years of age to engage in sexual conduct or a sexual performance. TEX. PEN. CODE ANN. § 43.25(b).[6] "Sexual conduct" means

---

[6]An offense under Section 43.25(b) is a second-degree felony. TEX. PEN. CODE ANN. § 43.25(c) (Vernon Supp. 2004–2005).

sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola. TEX. PEN. CODE ANN. § 43.25(a)(2) (Vernon Supp. 2004–2005); *Alexander v. State*, 906 S.W.2d 107, 109 (Tex. App.—Dallas 1995, no pet.). "Sexual performance" means any performance or part thereof that includes sexual conduct by a child younger than eighteen years of age. TEX. PEN. CODE ANN. § 43.25(a)(1) (Vernon Supp. 2004–2005); *Alexander*, 906 S.W.2d at 109.

The State charged Scott with allegations of inducing a sexual performance by the three complainants:

> did then and there intentionally or knowingly, knowing the character and content thereof, *induced* a child younger than 18 years of age, to-wit: [each complainant], to engage in sexual conduct or a sexual performance, to-wit actual lewd exhibition of the genitals or the anus, or masturbation.

(Emphasis added.)

In the absence of a statutory definition, words are to be taken and understood in their common and ordinary meanings. *Williams v. State*, 674 S.W.2d 315, 322 (Tex. Crim. App. 1984); *Alexander*, 906 S.W.2d at 111. Since the term "induce" is not defined by the Texas Penal Code, we must adopt the word's meaning in common usage. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005). To "induce" is "to lead or move by persuasion or influence, as to some action or state of mind" or "to bring about, produce, cause." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 975 (2d ed. 1987). Black's Law Dictionary defines "inducement" as "[t]he act or process

9

of enticing or persuading another to take a certain course of action." BLACK'S LAW DICTIONARY 790 (8th ed. 2004). We now turn to look at cases which illustrate the term "induce."

One induces a child to engage in sexual conduct if he or she instructs the child to disrobe and engage in simulated sexual intercourse with a nude female child. *Foty v. State*, 755 S.W.2d 195 (Tex. App.—Houston [14th Dist.] 1988, no pet.). Foty photographed the two children in various sexual positions and in a variety of settings both inside and outside his house. *Id*.

Another man admitted taking photographs of a young girl nude from the waist down with her legs spread and a close-up photograph of the girl's genitalia, but he argued that he had taken the photographs to document suspected sexual abuse of the girl, a defense which the jury rejected. *See Garay v. State*, 954 S.W.2d 59, 62 (Tex. App.—San Antonio 1997, pet. ref'd). The appellate court held that the admissions and photographs alone were sufficient evidence to support the inducement charges. *Id*. at 66.

Still another individual challenged the sufficiency of the State's proof of the inducement element of this offense. *Dorval v. State*, No. 03-03-00570-CR, 2004 Tex. App. LEXIS 6813, at *2–3 (Tex. App.—Austin July 29, 2004, no pet.) (not designated for publication). The appellate court held that a rational trier of fact could conclude beyond a reasonable doubt that the complainant was persuaded or prevailed on to engage in the sexual performance by Dorval's repeated requests, his promise not to touch her, and his assurance that the videotape would belong to her. *Id*.

10

The Corpus Christi Court of Appeals recently addressed the limits of the term "induce" as used by Section 43.25(b). *See Dornbusch v. State*, 156 S.W.3d 859, 866–68 (Tex. App.—Corpus Christi 2005, no pet.). That court determined that Section 43.25(b)'s use of the term "induce" was not unconstitutionally vague as applied to Dornbusch's alleged conduct. *Id*. at 867. The record showed that Dornbusch held a position of authority at the complainant's school, that Dornbusch provided the complanaint with alcohol, that he took her to a motel out of town during the school day, and that he made unsolicited sexual advances while at the motel jacuzzi. *Id*. Since the complainant was supposed to be at school and was, instead, miles away having consumed alcohol, the court concluded Dornbusch had put her in a position in which she found it almost impossible to deny a sexual advance. *Id*. Such conduct, held the court, fell within the common understanding of the term "induce." *Id*. The *Dornbusch* court concluded that the evidence established Dornbusch used persuasion and influence to bring about the complainant's sexual conduct and, thus, was legally sufficient to prove inducement. *Id*. at 868. The evidence was also held to be factually sufficient to support the jury's verdict. *Id*. The complainant's testimony that she was not offered money or grades in exchange for sexual conduct, that she was not intoxicated, that she was not threatened, and that she knowingly consented to the sexual conduct did not outweigh the evidence that Dornbusch induced the sexual conduct by putting the complainant in the above-detailed situation. *Id*. The statute does not require that any benefit be provided in exchange for the sexual conduct, nor does the common meaning of the term "induce" require such an exchange. *Id*. Similarly, neither the

11

statute nor the generally understood meaning of "induce" requires that the inducement be verbal and explicit. *Id*. *Dornbusch* was careful to distinguish the term "induce" from the term "force." *Id*.

We review the legal sufficiency of the evidence by viewing the relevant evidence in the light most favorable to the verdict and determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). While the evidence shows that the boys' masturbation[7] would have fallen into the definition of sexual performance, on this record, there is no direct link between any inducement from Scott—requests, good wages, dinner, entertainment, and gifts—and the boys' masturbation. All three boys testified that Scott never coerced, encouraged, or even asked them to masturbate in the shower. Scott did encourage them to take a shower, but he did not encourage them to masturbate. In the relatively few cases addressing this offense, most, if not all, have involved sexual conduct or a sexual performance of which the child victim was aware. The boys testified they were unaware they were being videotaped while in the shower.

The State argues that, since Scott had already videotaped the boys in the shower and knew that they were likely to engage in masturbation, Scott's encouragement and bribery of the boys to take a shower is the functional equivalent of inducing the actual act of masturbation. It would appear that there has been an increasing reach of this provision from *Foty* to *Dornbusch*, but finding the

---

[7]The State, in its argument, concedes that, absent the masturbation, there would be no sexual conduct contained in the videotapes. We limit our discussion to the masturbation.

12

evidence sufficient here would expand the statute beyond its plain meaning and beyond our understanding of the Legislature's intent in passing it.

Scott's inducement must relate to the specific sexual conduct at which the statute is aimed. That is, inducing the boys to take a shower does not violate the statute. Indeed, it is the masturbation that satisfies the sexual conduct element of the offense. It is this specific conduct which must be induced in order to violate the statute. Put another way, when looking at whether the facts of any given case constitute "inducement" in its ordinary meaning, the focus must be on what, if anything, Scott did to bring about, persuade, or encourage the boys' masturbation.

It is contrary to the ordinary meaning of the word "induced" to conclude that Scott used "persuasion or influence" to "lead" the boys to masturbate when there was no direct inducement and the boys were not aware they were being observed. By all accounts, the boys did not know Scott was videotaping them while they were in the shower. Each testified that Scott never mentioned masturbation to them, and A. H. testified that he would have refused any request by Scott to masturbate.

Scott did induce the boys to take a shower and then capitalized on the boys' tendencies to masturbate by recording them for his own gratification. We do not minimize the wrong committed against these young people; the record clearly supports a finding that Scott wronged these boys. However, on these facts, the offense was not one of inducement of a sexual performance or sexual

13

conduct as contemplated by Section 43.25(b).[8]  As D. H. testified, "he induced me to be around the environment to do that."  While probably an accurate statement, it does not amount to the offense charged here.  We sustain Scott's first point of error, concluding that, on these facts, the evidence was legally insufficient to prove that Scott induced the boys to masturbate.  We reverse the judgment of conviction and render a judgment of acquittal on Count One of each indictment.  *See Flores v. State*, 139 S.W.3d 61, 64 (Tex. App.—Texarkana 2004, pet. ref'd).

Having concluded that the evidence was legally insufficient to support the conviction, we proceed to Scott's other points of error, with the understanding that Scott is subject to conviction only for the remaining offenses: production or promotion of a sexual performance by a child and possession of child pornography.[9]

*(4)      As to Each Indictment, Refusal To Sever Count II from Count III Was Harmful Error*

On November 22, 2004, more than thirty days before trial, the State filed its notice of consolidation.  *See* TEX. PEN. CODE ANN. § 3.02(b) (Vernon 2003).  Before trial, Scott responded

---

[8]We note the unpublished case of *Goodson v. State*, Nos. 2-01-458-CR, 2-01-459-CR, 2-01-460-CR, 2-01-461, CR, 2003 Tex. App. LEXIS 3404 (Tex. App.—Fort Worth Apr. 17, 2003, pet. ref'd) (not designated for publication), involving a hidden camera used to tape two girls taking showers.  The facts are somewhat analogous, and Goodson, like Scott, was charged with an offense under Section 43.25(b).  *Id.* at *6.  While he challenged the limits of "induce" by way of a motion to quash the indictment, the *Goodson* case is procedurally distinguishable because Goodson pled guilty.  Thus, Goodson was not entitled to a review of the sufficiency of the evidence.  *Id*. at *9.

[9]When a reversal rests on the ground that the State has failed to produce sufficient evidence to prove its case, the Double Jeopardy Clause bars the State from making a second attempt at conviction.  *Tibbs v. Florida*, 457 U.S. 31, 42 (1982); *see Greene v. Massey*, 437 U.S. 19, 24 (1978); *Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004).

14

and filed a motion to sever Count III from Counts I and II in each indictment.[10]  After hearing

arguments, the trial court denied the motion to sever and allowed the State to proceed on the

consolidated causes.

A defendant may be prosecuted in a single criminal action for all offenses arising out of the

same criminal episode.  TEX. PEN. CODE ANN. § 3.02 (Vernon 2003); *see also* TEX. CODE CRIM.

PROC. ANN. art. 21.24 (Vernon 1989).  The accused may rely on Section 3.04, however, and seek

a severance of the offenses:

> (a) Whenever two or more offenses have been consolidated or joined for trial under Section 3.02, the defendant shall have a right to a severance of the offenses.

> (b) In the event of severance under this section, the provisions of Section 3.03 do not apply, and the court in its discretion may order the sentences to run either concurrently or consecutively.

> (c) The right to severance under this section does not apply to a prosecution for offenses described by Section 3.03(b)(2) unless the court determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses, in which event the judge may order the offenses to be tried separately or may order other relief as justice requires.

TEX. PEN. CODE ANN.  § 3.04 (Vernon 2003).  When a defendant timely requests severance under

Section 3.04(a), his or her right to a severance is absolute and severance is mandatory.  *See Coleman

v. State*, 788 S.W.2d 369, 371 (Tex. Crim. App. 1990).  A motion to sever must be raised before

trial.  *See Thornton v. State*, 986 S.W.2d 615, 617 (Tex. Crim. App. 1999).

---

[10]Scott also moved to sever Counts I and II and to have a separate trial as to each complainant.  But the most important portion of the motion moves the trial court to sever Count III—to which Scott pled guilty—from Counts I and II, in each case.

15

By its own terms, Section 3.04(a) does not apply to offenses falling under Section 3.03(b)(2), including offenses involving sexual performance by a child under Section 43.25. Therefore, Scott was not entitled to a mandatory severance of Count I from Count II. Since Counts I and II involve Section 3.03(b)(2) offenses, Scott would bear the burden of showing that he "would be unfairly prejudiced by a joinder of offenses." *See* TEX. PEN. CODE ANN. § 3.04(c). Section 3.04(c)'s exception does not, however, apply to an offense under Section 43.26 for possession of child pornography. Therefore, on his timely request, Scott was entitled to a mandatory severance of Count III from Counts I and II in each indictment. *See* TEX. PEN. CODE ANN. § 3.04(a); *Coleman*, 788 S.W.2d at 371.

Error surrounding a trial court's failure to grant a mandatory severance under Section 3.04(a) is subject to harm analysis. *Llamas v. State*, 12 S.W.3d 469, 470 (Tex. Crim. App. 2000). We must disregard any error that does not affect Scott's substantial rights. *See* TEX. R. APP. P. 44.2(b). Everything in the court reporter's record is data from which we can analyze harm. *See Llamas*, 12 S.W.3d at 471. The Texas Court of Criminal Appeals has directed Texas courts "[t]o judge the likelihood that harm occurred [by] consider[ing] everything in the record including all the evidence admitted at trial, the closing arguments, and, in this case, the jurors' comments during voir dire." *Id*.

The State relies on *Dominguez v. State*, 62 S.W.3d 203, 206–08 (Tex. App.—El Paso 2000, pet. ref'd), to support its position that error, if any, in failing to sever the trial on all counts was harmless. The *Dominguez* trial court refused to sever the trial on allegations of unlawful possession

16

of a controlled substance and failure to stop and render aid, offenses which are markedly different than those before us.[11] *Id.* at 205. The appellate court recognized that, on his timely request, Dominguez was entitled to a severance of the offenses and that the trial court erred by refusing to grant the severance. *Id*. at 206. The court concluded, however, that evidence of each of the crimes would have been admissible in a separate trial of the other offense as "same transaction contextual evidence." *Id*. at 208 (citing *Rogers v. State*, 853 S.W.2d 29, 32–34 (Tex. Crim. App. 1993 ).) Since the jury would have heard "the same evidence regardless of whether the offenses were tried separately in different trials or together in one," the court concluded it was harmless error to refuse to sever the offenses. *Id*.

The Waco Court of Appeals recently decided a case similar in some respects to the one before us. *See Wheat v. State*, 160 S.W.3d 631, 634 (Tex. App.—Waco 2005, no pet.). Wheat was charged with two counts of indecency with a child against two complainants and one count of sexual assault of one of those complainants. *Id*. at 632. Wheat pled "guilty" to both counts of indecency

---

[11]In terms of analysis, we note that *Dominguez* is more relevant to the questions presented here than some other cases regarding the issue of severance of multiple sexual offenses committed against children. *See Matthews v. State*, 152 S.W.3d 723, 726 (Tex. App.—Tyler 2004, no pet.); *Salazar v. State*, 127 S.W.3d 355, 358 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). All allegations pending against Matthews and against Salazar were specifically included in Section 3.03(b)(2), meaning that severance of these offenses was discretionary under Section 3.04(c). *See Matthews*, 152 S.W.3d at 730; *Salazar*, 127 S.W.3d at 364. Therefore, Matthews and Salazar had to show that joinder caused "unfair prejudice" and that the trial court abused its discretion in refusing to sever the trial. *See Matthews*, 152 S.W.3d at 730; *Salazar*, 127 S.W.3d at 364. Here, allegations of possession of child pornography under Section 43.26 does not fall within Section 3.03(b)(2) and, therefore, was not subject to discretionary severance. Rather, as we will discuss, severance in the instant case was mandatory under Section 3.04(a).

17

with a child and "not guilty" to the allegations of sexual assault of a child. *Id.* Each offense was a Section 3.03(b)(2) offense, meaning Section 3.04(c) would require Wheat to prove he was "unfairly prejudiced" by the joinder of the three offenses. The court held that the trial court abused its discretion by refusing to sever the counts to which Wheat pled "guilty." *Id.* at 637. Wheat was unfairly prejudiced on the sexual assault allegation by the unauthorized bifurcated trial on the two "guilty" pleas. *Id.* at 636–37; *see also* TEX. CODE CRIM. PROC. ANN. art. 26.14 (Vernon 1989); *Ricondo v. State*, 634 S.W.2d 837, 841 (Tex. Crim. App. 1982). The court pointed out that the consolidation affected what defensive theory Wheat could advance at trial. *Wheat*, 160 S.W.3d at 636. The court also suggested the possibility that defense counsel could have prevailed on objections to the admission of any evidence relating to those two offenses in a separate trial on the sexual assault charges. *Id.*

Relying on the principles expressed in *Dominguez*, the State argues that, even if trial of the allegations in each Count III should have been severed in the instant cases, any error is harmless since all evidence related to Count III would probably have been admissible in trial of Counts I and II either as "same transaction contextual evidence" or as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident under TEX. R. EVID. 404(b). *See Dominguez*, 62 S.W.3d at 208 (citing *Rogers*, 853 S.W.2d at 32–34); *see also Tovar v. State*, 165 S.W.3d 785, 795 (Tex. App.—San Antonio 2005, no pet.).

18

*Dominguez* does not address all of our concerns in the case at bar, however, since that case involved joinder of only offenses to which the defendant had pled "not guilty." Here, of course, the trial proceeded on charges to which Scott had pled "guilty" and others to which he pled "not guilty." *Dominguez* does remain helpful in its illustration of the harm analysis required when dealing with a trial court's refusal to grant a motion for mandatory severance under Section 3.04(a).

In *Wheat*, we see another distinction: Wheat was convicted of three offenses, all of which fell under Section 3.04(c)'s discretionary severance provision as well. In the instant case, since Counts III, alleging possession of child pornography, did not fall under Section 3.03(b)(2), discretionary severance under Section 3.04(c) is not the issue as it was in *Wheat*. The allegations pending against Scott put him squarely within the mandatory severance provision of Section 3.04(a) with respect to Count III. That being the case, on Scott's timely request for severance, the trial court was required to sever each Count III. However, *Wheat* remains valuable to our discussion in that it analyzes the impact or prejudice of trying a defendant for an offense to which he or she pled "guilty" with an offense to which he or she pled "not guilty."

After reviewing the entire record to determine whether the appellant was harmed by the failure to grant mandatory severance, the *Llamas* court noted the record in that case showed that, no less than five times during voir dire, veniremembers commented in front of the entire jury panel that they were concerned that Llamas had two charges against him. *Llamas*, 12 S.W.3d at 472 (quoting and affirming the observations of the intermediate appellate court in *Llamas v. State*, 991 S.W.2d

19

64, 69 (Tex. App.—Amarillo 1998)).  The court pointed out that these concerns constitute "exactly the type of harm that [S]ection 3.04 allows a criminal defendant, in his sole and absolute discretion, to choose to avoid."  *Id*. (again quoting the observations of the lower court).  That being the case, the court could not be sure that the error in refusing mandatory severance did not have a substantial or injurious effect on the jury's verdict.  *Id*.

Similarly, we note the comments made during voir dire by defense counsel when the panel learned of Scott's plan to plead "guilty" to possession of child pornography:

> [DEFENSE COUNSEL]:      Does anybody here had [sic] a son, daughter, grandson or granddaughter that has been the victim of any type of sexual assault r sexual abuse that might make you feel like you could not serve on this jury? What's your number?
>
> JUROR:      18.
>
> [DEFENSE COUNSEL]:      Could you tell me about that?
>
> JUROR:      Family members.
>
> [DEFENSE COUNSEL]:      Was that your son or daughter?
>
> JUROR:      Yes.
>
> [DEFENSE COUNSEL]:      The fact that that happened to you, are you going to hold that against Mr. Scott?
>
> JUROR:      Well, I got to ask you a question.
>
> [DEFENSE COUNSEL]:      Yes, sir.
>
> JUROR:      You announced that he had possession of pornographic material.

20

[DEFENSE COUNSEL]:      Yes, I did say that.

JUROR:      And that could entice young kids into an act.

[DEFENSE COUNSEL]:      You're right.

JUROR:      So, it is extremely hard to be able to stay focused on it without hearing all the facts. But that one statement was awful strong for the D.A. in my opinion.

[DEFENSE COUNSEL]:      What number are you?

JUROR:      28.

While the record is somewhat unclear as to which statements are attributable to Juror No. 18 and which are attributable to Juror No. 28,[12] it seems reasonably clear that both made similar comments regarding the guilty plea. At a minimum, some veniremembers expressed some ideas associating Scott's guilty plea with his guilt on the other charges, thereby exposing the entire panel to such ideas. We point out also that Juror No. 18 was on the convicting jury; Juror No. 28 was not. At any rate, we find these comments likely indicative of the impact that a guilty plea may have on a juror deliberating closely-related allegations.

We add that an admission to possession of the videotapes of the showering boys bears significantly on the allegations of production and promotion of a sexual performance of a child. In

---

[12]The exchange also could illustrate that Juror No. 18 was interrupted when Juror No. 28 asked, "Well, I got to ask you a question," in which case Juror No. 18 did not express any notion that Scott's plea of "guilty" had any bearing on his guilt of the other charges. We think this is the least likely reading of the passage, but possible. Nevertheless, the comments, no matter who made them, posed "the very threat" Section 3.04 permits a defendant to avoid. *See Llamas*, 12 S.W.3d at 472.

21

its opening statement, the State seized on both the guilty plea itself and its close relation to the production or promotion charges:

> He's already pled guilty to possession of child pornography, the videotapes of the boys that he made. According to what I heard on voir dire, it doesn't really seem that he has an argument over production of a sexual performance because he's the one that made the videotapes, he's the one that did everything. He hasn't pled guilty to it but I think the evidence is going to show that that is pretty strong.

The State similarly mentions the guilty plea during its closing argument to the jury: "Without question he has pled guilty to possessing child pornography, so you sign that. Now, if you go to count two, he hasn't really pled guilty to that, but he has conceded it under all the facts." The State refers to Scott's guilty plea twice more in its rebuttal, at one point clearly associating the guilty plea to the inducement charges as well:

> He's already pled that he knew what was on these tapes. That's knowledge, that's intent, that's conduct on his part to induce. Make no mistake about it. There is no question about it.

The State's several references to and reliance on the guilty plea in its argument to the jury would serve only to reinforce any of the ideas that the jurors had regarding the impact of Scott's guilty pleas to Counts III. As did the Texas Court of Criminal Appeals in *Llamas*, we conclude the trial court's failure to grant Scott's timely request for mandatory severance affected Scott's substantial rights.

We also find persuasive the Waco court's analysis in *Wheat* because, although that case involved discretionary severance under Section 3.04(c), it specifically addresses the impact of failure to sever allegations to which a defendant pled "guilty." The court in *Wheat* was called on to

22

determine whether failure to grant discretionary severance of three counts, to two of which Wheat pled "guilty," caused "unfair prejudice." Our inquiry is somewhat similar in that we must determine whether the trial court's error in refusing *mandatory* severance of Counts III to which Scott pled "guilty" had a "substantial or injurious effect on the jury's verdict." *See Llamas*, 12 S.W.3d at 472.

Since here, as in *Wheat*, we cannot determine what strategy defense counsel would have taken, we cannot conclude the trial court's failure to sever Scott's guilty pleas to each Count III is harmless error. Now, it is not unheard of for defense counsel to utilize a strategy like the one defense counsel here was forced to employ. That is, there may be a tactical advantage in admitting to the jury that the appellant did commit some offense, but that the appellant is not guilty of another, often more serious offense. Here, however, it seems clear from defense counsel's attempts to sever the child pornography allegations that he would not have opted to employ such a strategy.

While we acknowledge that there is evidence of Scott's guilt of the allegations of production or promotion of a sexual performance by a child, we bear in mind at least two substantial rights—the presumption of Scott's innocence and his right to a fair trial on Count II of each indictment—both substantial rights in terms of harm analysis. Both of these substantial rights were most likely compromised by the trial court's failure to sever each Count III. Therefore, we sustain Scott's point of error and reverse and remand for a new trial as to each Count II. *See* TEX. CODE CRIM. PROC. ANN. art. 44.29(a) (Vernon Supp. 2004–2005). In connection with each Count III, Scott's "guilty"

23

plea is unaffected by the failure to sever.[13]  He is, however, entitled to a new trial on punishment[14] relating to his "guilty" pleas.  *See* TEX. CODE CRIM. PROC. ANN. art. 26.14; art. 44.29(b) (Vernon Supp. 2004–2005); *Wheat*, 160 S.W.3d at 637.

*Conclusion*

The search was valid and the physical evidence was admissible.  But, since there is legally insufficient evidence to sustain Scott's conviction for inducing a sexual performance of a child, we reverse the trial court's judgment of conviction and render a judgment of acquittal as to Count I in each indictment.  Since we cannot disregard the trial court's error in its failure to sever each Count III pursuant to the mandatory severance provision of Section 3.04(a), we reverse the convictions as to each Count II, sever each Count III from the associated Count II, and remand the cause for a new

---

[13]The law in this State is well settled that a guilty plea entered without benefit of a plea agreement waives all nonjurisdictional defects occurring before entry of the plea. *See Helms v. State*, 484 S.W.2d 925, 927 (Tex. Crim. App. 1972), *overruled in part*, *Young v. State*, 8 S.W.3d 656, 666 (Tex. Crim. App. 2000); *Stahle v. State*, 970 S.W.2d 682, 694 (Tex. App.—Dallas 1998, pet. ref'd). The *Helms* rule applies to pleas of "guilty" before a jury as well as those before the judge. *See King v. State*, 687 S.W.2d 762, 765–66 (Tex. Crim. App. 1985); *Splawn v. State*, 949 S.W.2d 867, 870 (Tex. App.—Dallas 1997, no pet.).

[14]Specifically, the Texas Code of Criminal Procedure provides the following:

Where a defendant in a case of felony persists in pleading guilty or in entering a plea of nolo contendere, if the punishment is not absolutely fixed by law, a jury shall be impaneled to assess the punishment and evidence may be heard to enable them to decide thereupon, unless the defendant in accordance with Articles 1.13 or 37.07 shall have waived his right to trial by jury.

TEX. CODE CRIM. PROC. ANN. art. 26.14.

guilt/innocence trial on each Count II and a new punishment trial on each Count III. TEX. CODE

CRIM. PROC. ANN. art. 44.29; *see Wheat*, 160 S.W.3d at 637.


                                                  Josh R. Morriss, III
                                                  Chief Justice

Date Submitted:      July 13, 2005
Date Decided:       September 8, 2005

Publish