In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00188-CR


______________________________




EFFRIN JERMON SMITH, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 21441




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley


Dissenting Opinion by Justice Carter


O P I N I O N



 Effrin Jermon Smith pled guilty in this case to a charge of delivery of a controlled substance,
less than one gram, in a drug-free zone, with a deadly-weapon finding and was tried simultaneously
with and in the same hearings with a charge of possessing more than four, but less than 200 grams
of a controlled substance. (1) The case was tried to the trial court on punishment, and the court
sentenced Smith to ten years' imprisonment.

 On appeal, Smith contends that we should reverse for a new punishment hearing because he
did not adequately waive his right to a jury trial on punishment. Counsel points out that the Federal
Constitution as interpreted by the United States Supreme Court requires an affirmative intentional
relinquishment of the right to a jury trial and that Texas statutory law also requires the right to a jury
trial to be waived in writing--and the section of the written admonishments that would have
provided such waiver was struck through. Counsel also argues that no adequate verbal waiver of the
right to a jury on punishment was made.

Constitutional Underpinning

 The initial problem with this position is that the federal constitutional right of trial by jury
does not encompass the right to have a jury assess the punishment. Martin v. State, 452 S.W.2d 481,
482 (Tex. Crim. App. 1970); Baylor v. State, 195 S.W.3d 157, 159 (Tex. App.--San Antonio 2006,
no pet.). (2) Accordingly, Smith's suggestion that constitutional rights are implicated in this instance
is without merit. (3) In Texas, the right of the accused for a jury to assess punishment is purely
statutory in nature.

Factual Basis for the Claim

 The factual basis for the argument is this: in the omnibus admonishment and waiver and
approval document filed with and approved by the court, the specific portion of the document 
containing the waiver of the right to have a jury determine punishment has been stricken. The
pertinent portion of the document reads as follows:

 15. I give up and waive my right to a jury, both as to my guilt and assessment of
my punishment. I give up and waive the right to appearance, confrontation, and
cross-examination of witnesses. I consent to oral and written stipulation of evidence.

 In this appeal, under the document mentioned, Smith signed an instrument by which he
expressly waived his right to a jury trial as to the issue of guilt, but did not make a similar waiver
of his right to have a jury assess his punishment. (4) Article 26.14 of the Texas Code of Criminal
Procedure states that, 

 [W]here a defendant in a case of felony persists in pleading guilty or in entering a
plea of nolo contendere, if the punishment is not absolutely fixed by law, a jury shall
be impaneled to assess the punishment and evidence may be heard to enable them to
decide thereupon, unless the defendant in accordance with Articles 1.13 or 37.07
shall have waived his right to trial by jury. 


Tex. Code Crim. Proc. Ann. art. 26.14 (Vernon 1989); see Scott v. State, 173 S.W.3d 856, 869
(Tex. App.--Texarkana 2005, no pet.).

 Article 37.07 provides that, if a finding of guilty is returned, the defendant may, with the
consent of the attorney for the State, change his or her election of whether the judge or jury assesses
the punishment. Tex. Code Crim. Proc. Ann. art. 37.07, § 2(b). That section is inapplicable. 

 Article 1.13 provides that a defendant may, upon entering a plea, waive the right of trial by
jury but specifies that the waiver must be in writing, be in open court, and be made with the consent
and approval of the court and the attorney representing the State. Tex. Code Crim. Proc. Ann.
art 1.13. 

Is waiver of jury trial at guilt/innocence phase enough to waive at punishment phase as well?

 The State has directed us to the case of Johnson v. State, 72 S.W.3d 346 (Tex. Crim. App.
2002), as its primary authority to support the court's action. In Johnson, the court held that the lack
of a written jury waiver is not harmful when the record reflects that the defendant was aware of his
right to a jury trial and waived that right. Id. at 348-49. Based on the recital in the judgment stating
that Johnson "waived trial by jury," the court determined that Johnson knew about his right to a jury
trial and that he waived that right. Id. at 349. The court noted that a recital in a judgment is
presumptively correct unless there is direct proof to its falsity. Id. n.10 (citing Breazeale v. State,
683 S.W.2d 446, 450 (Tex. Crim. App. 1984) (op. on reh'g)). Because the court found nothing in
the record directly proving the recital was false, the court held that Johnson had not been harmed
because he consciously waived his right to a jury trial--even though the record also did not support
the recital. Id.

 That case is informative, but does not directly control this situation. It is clear from the
authorities cited above that the right to a jury trial on guilt/innocence and the right to have a jury
assess punishment are two entirely different creatures. There is no authority suggesting that to waive
one is to waive both, and the forms typically used (as in this case) directly reflect that fact. There
was no written waiver of the statutory right to have a jury assess punishment in this case and, more
importantly, the part of the form waiver which would have effected that result was stricken through. 
Likewise, there was no explicit oral waiver at the guilt/innocence phase hearing. 

 The judgment in this case does state that Smith waived "the right of trial by jury." It does
not state that he waived the right to have punishment decided by a jury; even more to the point, the
document shows an effort to specifically strike out the preprinted waiver concerning the waiver of
a right to have a jury assess punishment. Again, though the punishment proceeding is part of the
overall trial, the cases uniformly hold that the right is not based on the right to a jury trial on
guilt/innocence, but instead is based on statutory fiat. 

 There was only one brief exchange at the guilt/innocence phase hearing that mentioned jury
trial: the court asked Smith, "Do you want a jury trial?" to which Smith answered, "No, sir." The
plea of guilty was entered some eight days before the trial before the court on the issue of
punishment. 

 We conclude that this is insufficient to act as a waiver, either oral or written, sufficient to
meet the requirements of the Code.

Preservation of Error

 The next question is whether the issue now raised was adequately preserved for our review. 
As previously stated, the right to a jury trial on punishment is not constitutionally based. There are
three different types of waiver analyses.

 A systemic (or absolute) requirement is one of the "three distinct kinds" of rules that our
judicial system may be thought to contain. Brumit v. State, 206 S.W.3d 639, 644 (Tex. Crim. App.
2006); Mendez v. State, 138 S.W.3d 334, 340-41 (Tex. Crim. App. 2004); Marin v. State, 851
S.W.2d 275, 279-80 (Tex. Crim. App. 1993), rev'd on other grounds, 891 S.W.2d 267 (Tex. Crim.
App. 1994). Those requirements are not waivable.

 A second kind is the "waivable right," that is, "rights of litigants which must be implemented
by the system unless expressly waived." Marin, 851 S.W.2d at 279-80; Garcia v. State, 149 S.W.3d
135, 144 (Tex. Crim. App. 2004).

 The third kind is the "forfeitable right"; in this class are "rights of litigants which are to be
implemented upon request." Marin, 851 S.W.2d at 279; Garcia, 149 S.W.3d at 144. "A cursory
examination of the myriad evidentiary and procedural rules compris[ed by] our system reveals that
most of them are of this [forfeitable] type. . . . In short, the rights of litigants in our system are
usually forfeited by a failure to exercise them." The requirements for presenting a complaint for
appellate review are not the same for all these kinds of rules. Mendez, 138 S.W.3d at 340-41.

 In this case, there is authority that there is no constitutional right to a jury for punishment. 
It is not a systemic requirement. We thus look to see if the right is one described as being waivable. 
Smith argues that it is a waivable right, one that must be implemented by the system unless expressly
waived; he further takes the position that no express waiver is shown by this record. Waivable-only
rights are those rights that must be recognized unless affirmatively waived on the record. Id. They
include the right to assistance of counsel and to a jury trial. See Aldrich v. State, 104 S.W.3d 890,
895 (Tex. Crim. App. 2003); Deener v. State, No. 05-05-00703-CR, 2006 WL 3479941 (Tex.
App.--Dallas Dec. 4, 2006, no pet. h.).

 One question is whether the constitutionally based right to a jury trial should be treated
differently for preservation purposes than a statutory right to a jury trial at punishment. Arguably,
it should not. Marin, the underlying case which drew these distinctions, was itself an analysis of a
statutory right to ten days to prepare for trial. As assessed recently by the Texas Court of Criminal
Appeals, 

 [t]he issue in Marin was "whether the failure of the trial judge to allow appointed
counsel ten days of trial preparation in violation of article 1.051(e), Texas Code of
Criminal Procedure, may be raised for the first time on appeal." We found that the
right protected by this statute was waivable-only because the Legislature said so: 


 "the Court of Appeals rightly determined that article 1.051(e) is waivable
only, inasmuch as the Legislature said so expressly by providing that
appointed counsel 'may waive the [10 days of] preparation time with the
consent of the defendant in writing or on the record in open court.' We agree
with the lower court that this language clearly does not contemplate a
forfeiture of the statutory right from a mere failure to object at trial." 


Saldano, 70 S.W.3d at 888 (quoting Marin, 851 S.W.2d at 280) (footnotes omitted).

 Thus, under Marin, where the Legislature has provided a specific method that is to be utilized
in order to waive the right, then it is "waivable only," and a trial objection need not be raised.

 In summary, the right to jury trial is "waivable only." The right to have a jury determine
punishment is likewise waivable--as provided explicitly by statute, and thus is "waivable only." 

 The issue is properly before us for review. 

On the Merits

 We have previously recognized from our review of the record that there is no written waiver
and that the judgment does not contain language elsewhere which might be glossed to serve as a
waiver of this separate right. We have also recognized that Smith did not orally waive this right.

 As a nonconstitutional error, we will find harm resulted if Smith's substantial rights were
affected. Johnson, 72 S.W.3d at 348; see also Tex. R. App. P. 44.2(b). We can glean from this
record that Smith was aware of his right to a trial by jury and was also aware of his right to a jury
at punishment. See Johnson, 72 S.W.3d at 349 (holding that, even where there is a violation of
Article 1.13, there is no harm if the record reflects that the defendant was aware of his right to a jury
trial); accord Ybarra v. State, 93 S.W.3d 922, 925-26 (Tex. App.--Corpus Christi 2002, no pet.). 
We also recognize that the violation of a mandatory statute does not, by itself, call for the reversal
of a conviction. Ford v. State, 73 S.W.3d 923, 925 (Tex. Crim. App. 2002). To assess
nonconstitutional errors, we examine whether the purpose of the statute or rule violated was thwarted
by the error. See id. at 925-26; Roethel v. State, 80 S.W.3d 276, 281 (Tex. App.--Austin 2002, no
pet.). 

 We conclude that the purpose of this statute is to ensure that a defendant is fully aware of his
right to have a jury determine his fate at the punishment phase of his trial. We believe that from this
record we can reasonably conclude that Smith was aware of that right, as he was fully informed of
its existence, and it is certainly apparent from the record that he expected the trial court to determine
his sentence in both cases. 

 We also recognize that the two appeals before us were tried simultaneously on punishment
by the trial court. While in this appeal Smith struck out the portion of his waiver that would have
waived his right to a jury trial on punishment, he did not strike out that portion in the other case. 
After being found guilty by the trial court on both charges, the court stated that it would hear
punishment (presumably in both cases) at a later date. Then, both cases were called for hearing on
punishment some eight days later, and evidence for both was presented and heard by the court. 
There was never any direct or implied suggestion (at either the guilt/innocence hearing or the
punishment phase hearing) by anyone that the court should have been engaged in considering the
punishment issue in only one of these two cases. 

 We do not suggest that this inaction constitutes a waiver because that would fly in the face
of the requirement of an express waiver of the right to a jury determination on punishment. 
However, it is relevant to the necessary harm analysis. 

 We reiterate: Smith was aware of his right, as shown by his action of expressly waiving the
right in one case, while striking through the waiver language in the second. The cases were tried
together, and the clear assumption and behavior of all parties, including counsel, court, and
defendant, reflects that they expected punishment to be determined by the trial court rather than by
a jury. 

 Pursuant to the reasoning used by the Texas Court of Criminal Appeals in Johnson, which
we are obligated to follow, we likewise find in this case that Smith was fully aware of his right to
a jury trial on the issue of punishment in this case; thus, no harm has been shown.

 We conclude that, under these facts, Smith's substantial rights were not violated by the error. 
The contention is overruled.

Reformation

 Smith also contends that the conviction in this appeal, trial cause number 21441, contains
an error: it incorrectly reflects a conviction for delivery of cocaine of four to 200 grams, when it
should have stated "less than one gram." The indictment alleges delivery of cocaine in an amount
less than one gram. 

 During the plea proceeding, the two cases were entangled by court and counsel. The court
admonished Smith that the range of punishment for the possession case (which was the four to 200
gram case) was two to ten years and that the range of punishment for the delivery (less than one
gram) was five to ninety-nine years or life in prison. The correct range was five to ninety-nine years
or life for the possession case (a first-degree felony), and two to ten years for the delivery (a third-degree felony). When Smith was ultimately sentenced by the court, the proper ranges were utilized
for the correct offenses. However, the judgment itself is incorrect, as is acknowledged by the State.

 We have the authority to correct and reform a judgment to make the record speak the truth. 
See French v. State, 830 S.W.2d 607 (Tex. Crim. App. 1992). Accordingly, we reform the judgment
in this case to delete the language stating that Smith was convicted for delivery of a controlled
substance between four and 200 grams in a drug-free zone, and reform the judgment to state that he
was convicted of delivery of a controlled substance, less than one gram, in a drug-free zone.

 As reformed, we affirm the judgment.


 Bailey C. Moseley

 Justice



DISSENTING OPINION

 The Texas Court of Criminal Appeals in Johnson held that the failure of the defendant to sign
a written waiver of jury trial is not harmful error when the record shows the defendant was aware
of such right and waived it. Johnson v. State, 72 S.W.3d 346, 349 (Tex. Crim. App. 2002). The
effect of the Johnson opinion is that a written document is not the exclusive way to evidence waiver
of a jury trial. In this case, the record shows that Smith knew of his jury trial rights because he
signed a form in which it appears he waived such right as to the guilt/innocence trial. However, the
fact that he knew of the right does not supply evidence that he waived that right. In fact, the record
shows that he specifically refused to waive his jury trial right as to punishment by affirmatively
marking out that part of the printed form. Further, the fact that he signed a written waiver of jury
trial as to both guilt and punishment in another case weighs against a finding of waiver in this case. 
If anything, it shows that he intended to waive a jury trial in both guilt and punishment stages of the
first trial, but here he specifically preserved his right to a jury trial for punishment. 

 In Johnson, the Texas Court of Criminal Appeals noted that the judgment recited a waiver
of jury trial and declared that such a recitation was binding in the absence of direct proof to the
contrary. Id. Here, such a recitation is in the judgment, but direct contrary proof is in the
record--the waiver of jury trial as to punishment has been marked out. We simply do not have
evidence that Smith waived his statutory right to a jury trial on punishment. The error cannot be
considered harmless. I would reverse the case for a new punishment trial. 

 I respectfully dissent from the majority opinion. 



 Jack Carter

 Justice


Date Submitted: February 26, 2007

Date Decided: April 17, 2007


Publish

1. The companion case is also being appealed and bears this Court's case number 06-06-00187-CR.
2. Texas also has both a constitutional right to a jury trial and a statutory right to a jury trial. 
Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. arts. 1.12, 1.13, 1.14, 1.15 (Vernon 2005),
art. 37.07 (Vernon 2006). However, the Texas constitutional right to a jury trial does not include the
right to have the jury assess punishment. Martin v. State, 753 S.W.2d 384, 389 (Tex. Crim. App.
1988); Martinez v. State, 66 S.W.3d 467, 471 (Tex. App.--Houston [1st Dist.] 2001, pet. ref'd).
3. We recognize that a sentencing scheme is proscribed by the United States Constitution based
upon the right to trial by jury if it allows a judge to impose a sentence above the statutory maximum
based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant. See
Cunningham v. California, ___ U.S. ___, 166 L.Ed.2d 856, 864 (2007). Those considerations are
not before us.
4. It is noted that the portions of the document containing the waivers of the right to confront
and cross-examine witnesses, as well as the consent to stipulation of evidence, are stricken through.


n;
 mso-para-margin-bottom:10.0pt;
 mso-para-margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Calibri","sans-serif";
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;}











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00176-CR

                                                ______________________________

 

 

                               ANGELA CHEATWOOD LEE,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the County
Court at Law No. 2

                                                           Angelina County, Texas

                                                           Trial
Court No. 09-1822

 

                                                         
                                         

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Angela
Cheatwood Lee appeals her conviction for the misdemeanor offense of harassment.[1]  After a trial to the court, she was found
guilty of harassment for repeatedly sending telephonic messages to her former
boyfriend, William Chunn.  The trial
court sentenced Lee to three months incarceration and a fine of $250.00, but
suspended the jail term, placing Lee on community supervision for six
months.  On appeal,[2] Lee
claims:  (1) the statute penalizing
harassment is unconstitutionally vague as it is applied to Lee; and (2) the
evidence is insufficient to support the judgment of the trial court.  After reviewing the applicable law, the
evidence, and Lees brief, we overrule her points of error and affirm the trial
courts judgment and sentence.   

I.          A Woman Scorned

            For
a period ending about two years before trial (which occurred in late spring of
2010),  Lee and Chunn had engaged in an
intermittent relationship for about six or seven years, a relationship which
Chunn described as both emotional and [m]iserable.  In the middle to latter part of 2009, Chunn
established a romantic relationship with another woman, Teresa Bobbitt (to whom
reference is made hereafter as Teresa). 
In August and September 2009, Lee made a number of telephone calls to
Chunns telephone number and left multiple voice messages.  Chunn testified Lee began to call more frequently
around September 26, 2009, when Lee discovered that Chunn was seeing Teresa.  In addition, Lee telephoned Chunn frequently
at his work places, the unwanted calls causing Chunn to lose one job.  Chunn married Teresa in January 2010.

            Teresa
testified that the calls and messages from Lee became much more frequent when
Lee discovered Teresa and Chunn were dating. 
Teresa said the calls [n]ever stopped since May 2009.  Like Chunn, she said the unwanted and
repeated contact from Lee strained the Chunns relationship.  Teresa related that because she and Chunn
shared a cell phone, she was aware of the multiple text messages sent by Lee to
Chunn; oftentimes, Teresa would answer calls to discover that the caller was Lee,
who would then demand to speak to Chunn. 
Teresa testified she took the cell phone, which bore several messages
recorded in August and September 2009, to the police and the police recorded
the messages which had been left.  Teresa
testified there were many more messages than those she shared with police, but
that she provided the police with only those few, due to the limited number of
messages the cell phone could retain. 
Teresa further testified she had on many occasions told Lee to cease the
calls, calls which she related were often placed in the late night or early
morning hours.  Teresa also testified that
she found the calls placed about 2:00 a.m. to be particularly annoying.  

            Lee
was interviewed by Lufkin Police Detective Ron Stubblefield.  The State introduced a compact disc, which
contained a recording of that interview along with recordings of five messages
left by Lee on Chunns cell phone.  Some
of these messages are very brief and consisted of requests by Lee for Chunn to
return the call.  In contrast to those
short messages, another of the calls lasts about a minute and twenty seconds
and is a rambling soliloquy by Lee wherein she declares her love for Chunn and
bemoans problems in their past relationship. 
The following and final message consumes a little more than half a minute;
in that message, Lee makes reference to the prior call, saying both that she
did not mean and did mean things she had said in the previous message and again
wishing she could talk with Chunn about their relationship.[3]  In the recorded interview, Lee told
Stubblefield that her repeated efforts to contact Chunn were due to her concern
for his lifestyle choices (such as alleged drug use) and that the purpose of
her calls was to encourage him to straighten up and live right.  Also mentioned was an instance in which Lee
came to a bowling alley to see Chunn and another incident about a year prior to
the interview when an argument between Lee and Chunns sister occurred.  

II.        No Unconstitutional
Vagueness of the Harassment Statute as Applied

            A.        Who
Possessed the Phone?

            In
her first point of error, Lee complains the statute is unconstitutionally vague
as applied to her under these circumstances. 


            A
claim that a statute is unconstitutional as applied is a claim that the
statute, although generally constitutional, operates unconstitutionally as to
the claimant because of his particular circumstances.  Gillenwaters
v. State, 205 S.W.3d 534, 536 n.3 (Tex. Crim. App. 2006); Tex. Boll Weevil Eradication Found., Inc.
v. Lewellen, 952 S.W.2d 454, 461 n.5 (Tex. 1997).[4]  Lee raises three areas where she believes the
statute is vague.   

            Lee
claims the statute is vague because it allows a conviction where the evidence
offered does not show that the phone which received the voice messages was in
the possession of William Chunn as opposed to Teresa Chunn.  Lee provides no explanation how this
situation renders the statute vague as applied to her.  Teresa testified that when she and Chunn
began dating, they got a single cell phone and Teresa usually kept that telephone
with her.  She said many calls came to
that telephone from Lee, during which Lee asked or demanded to speak with
Chunn.  Teresa also said that she found
text messages from Lee to Chunn which had been directed to the telephone.  Chunn also testified that he received multiple
calls and messages from Lee on the cell phone within the span of time named in
the information and for months after that time span.  All of this is evidence of voice messages
directed to Chunn (irrespective of whether the phone or phones upon which the
messages were received were in the possession of Chunn, of Teresa, or in their
joint possession).   

            Whether
the telephone upon which the offending voice messages were received was in the
possession of the victim (Chunn) named in the complaint and information, or
Chunns wife, Teresa, is not relevant. 
The statute criminalizes conduct where one, with intent to harass,
annoy, alarm, abuse, torment, or embarrass another, makes repeated telephone
calls to another, causing that persons telephone . . . to ring repeatedly or
makes repeated telephone communications either anonymously or in a manner
reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend
another.  Tex. Penal Code Ann. § 42.07(a)(4).  There is nothing in the proscribed behavior
criminalized by this statute which requires the accused to know which or whose
telephone actually received the offending calls or (also in this case)
messages.  In this age of ubiquitous
communication devices, it is certainly possible and is not inconceivable that
more than one telephone could be caused to ring repeatedly or made to receive
communications or messages.  Lee was not
required to know the identity of the person who actually possessed the
telephone to which she was making the proscribed communications at the time she
placed the calls or sent the messages so long as the State could prove, under
the terms of Section 42.07(a)(4), that Lee intended to direct those
communications to Chunn, the victim.  If the
State could prove that Lee engaged in the prohibited conduct by intending to
make the communications to Chunn, it would not exculpate her if the telephone
which Lee contacted was actually in the possession of Chunns wife at the time
of the transmission.  Had Lee not been
satisfied with the sufficiency of the notice provided by the complaint
concerning the nature of the States allegations and how she was alleged to
have violated the law, her remedy was to file a motion to quash the complaint
prior to trial.  See Tex. Code Crim. Proc.
Ann. art. 1.14(b) (Vernon 2005).  


            B.        Intent

            In
the same point of error, Lee contends that the statute under which she was
charged and convicted was vague as applied to her in failing to define if one
such as the appellant can be convicted without any offer that she had a
specific intent to violate the statute[]s provisions of intending to harass,
annoy, alarm, abuse, torment, embarrass, or offend another.  We disagree with Lees argument.  Section 42.07(a)(4) requires proof that the
actor engages in one of the various forms of prohibited conduct with intent to
harass, annoy, alarm, abuse, torment, or embarrass another.  Tex.
Penal Code Ann. § 42.07(a).  The
statute appears to be quite specific in its wording and fits the circumstances
described here.[5]   

            In
support of her claim that the statute is vague for not requiring specific
intent, Lees brief claims that Chunn believe[d] [Lees] intent [was]
otherwise.  We find nothing at the
location in the reporters record to which Lee cites to support this assertion,
unless she is referring to Chunns statement that Lees harassing calls started
when Lee found out Chunn was seeing another woman.  This neither negates an inference of intent
on Lees part, nor does Lee offer any support for her claim that Chunn did not
indicate he believed [Lee] had a specific intent to harass, annoy, alarm,
abuse, torment, embarrass, or offend him. 
Lees appellate argument in this regard would seemingly apply more
appropriately to an attack on the sufficiency of the evidence than to an
argument or explanation of Lees contention that the statute is vague as
applied to her.   

            In
her complaint that Section 42.07 is vague as applied to Lees circumstances,
she complains of the statutes use of the terms repeatedly and repeated.  Interpreting this statute, the Texas Court of
Criminal Appeals came to the following conclusion on the meaning of repeated
in this context:

The term repeated is commonly understood to mean
reiterated, recurring, or frequent.  Websters
Ninth New Collegiate Dictionary 998 (1988); 2 Oxford English Dictionary 2494 (1971).  Here, we believe that the Legislature intended
the phrase repeated telephone communications to mean more than one telephone
call in close enough proximity to properly be termed a single episode, because
it is the frequent repetition of harassing telephone calls that makes them
intolerable and justifies their criminal prohibition.  See M. Royall, Constitutionally Regulating Telephone Harassment:  An Exercise in Statutory Precision, 56 U.
Chi. L. Rev. 1403, 1430 (1989) (Prudence may justify a hands-off policy for
single calls made with the intent to harass, but as harassing calls are
repeated the state interest in intervening to protect the recipient becomes
more compelling.).

 

Scott, 322 S.W.3d at 669 n.12. 
In her brief, Lee argues the assumption that simple repeated repetition
[sic] can be construed on its face is vague as applied to the four non specific
voice messages were are [sic] produced. 
We take this fairly convoluted statement to mean that Lee does not
believe that four of the five recordings of telephone messages introduced into
evidence were sufficient to constitute the repeated telephone communications
prohibited by the statute.  Tex. Penal Code Ann. § 42.07(a)(4).  The testimony is not perfectly clear, but
Teresa testified to two telephone calls placed on the morning of September 9,
2009, three such calls about 6:00 a.m. September 25, 2009, while there were three
calls placed about 2:00 a.m and another two about 1:00 p.m. on September 26,
2009.  Of these calls, Teresa said, Those
were the only ones . . .  that I got recorded.  If I would have kept up with it, there would
have been more.  From these rounds of
telephone calls came the voice messages, which the Chunns presented to police
and which were introduced into evidence.  


            We
find in the instant situation, the telephone calls and voice messages described
by the Chunns, as well as the few actually recorded and introduced into
evidence, could qualify as repeated as that term is used in the statute.[6]  Lee has failed to establish the statute is
vague as applied to her situation.  We
overrule Lees first point of error.  

III.       Sufficiency of the
Evidence

            In
her second point of error, Lee claims the evidence is legally insufficient to
support the trial courts verdict.  In
reviewing the legal sufficiency of the evidence, we review all the evidence in
the light most favorable to the jurys verdict to determine whether any
rational jury could have found the essential elements of the charged offense.  Brooks
v. State, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (4-1-4 decision)
(citing Jackson v. Virginia, 443 U.S.
307, 319 (1979)); Hartsfield v. State,
305 S.W.3d 859, 863 (Tex. App.Texarkana 2010, pet. refd) (citing Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007)).  Our rigorous
legal sufficiency review focuses on the quality of the evidence presented.  Brooks,
323 S.W.3d at 91718 (Cochran, J., concurring).  We examine legal sufficiency under the
direction of the Brooks opinion,
while giving deference to the responsibility of the jury to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 31819).

            Legal
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically-correct jury charge.  Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).[7]  As charged in the information, the State was
required to prove that (1) on or about September 26, 2009, (2) Lee, with intent
to harass, annoy, alarm, abuse, torment, or embarrass Chunn, (3) sent repeated
voice message communications to Chunn, (4) in a manner reasonably likely to
harass, annoy, alarm, abuse, torment, embarrass, or offend another person.  Tex.
Penal Code Ann. § 42.07(a)(4).   

            Lee
argues that the evidence is legally insufficient to prove that she had the
specific intent to harass, annoy, alarm, abuse, torment, or embarrass
Chunn.  Intent may be inferred from
circumstantial evidence such as acts, words, and the conduct of the appellant.  Guevara,
152 S.W.3d at 50.  While it is true that
only five of the messages were introduced into evidence to prove the
informations charge that Lee harassed Chunn by leaving voice messages, there
was also testimony that Lee left many more messages than were preserved and
presented to Detective Stubblefield.  Teresa
said she only preserved the five messages she presented to Stubblefield, but
there were more.  Although Chunn said
that Lee had left fifteen to fifty messages, he did not specify a time
period.  Also, Chunn and Teresa both said
there were a high number of calls, with Chunn estimating fifty to a
hundred.  The testimony heard by the
court was that Lee had made multiple calls to Chunn at work and Chunn said he had
lost one job due to Lees calls.  Lee
told Stubblefield that she contacted one of Chunns employers to tell the
employer Chunn had falsified a drug test. 
This allegation, in addition to the number of calls and messages over
time, support an inference that the messages Lee left on or about September 26 were
made with the intent to harass, annoy, alarm, abuse, torment, or embarrass
Chunn.   

            Both
of the Chunns used the word annoy to describe their feelings about Lees
conduct in making the calls and leaving the messages.  Chunn said the calls were very annoying;
and Teresa said she was annoyed by Lee and her conduct.  Chunn and Teresa both said they told Lee not
to call several times because Chunn did not want to speak to Lee.  Listening to the recordings of the messages
admitted into evidence could further yield an inference they were made with the
intent to harass, annoy, abuse, torment, or embarrass Chunn.  Two of the messages are rambling professions
of Lees love for Chunn and her regret that their relationship had terminated.  Both Chunns testified that Lees repeated
calls and messages placed a strain on their relationship, and both said the
calls did not begin or at least achieve the high number until Lee became aware
of the relationship which existed between Chunn and Teresa.  There was evidence the Chunns contacted Lee
and asked her to cease her calls.  Lufkin
Police Officer Stephen Dickens testified he told Lee on June 19, 2009, that
Chunn wanted her contacts to cease, and Dickens asked Lee not to call Chunn any
more.  Likewise, Detective Stubblefield
also said that he had told Lee to stop contacting Chunn.  Although Stubblefield did not say exactly
when he told Lee to stop, he said that he told her before the interview with
her which occurred on October 5, 2009, and prior to the last set of phone
calls that were made.   

            Viewed
in totality, a rational finder of fact could conclude that Lee had the intent
to harass, annoy, alarm, torment, or embarrass Chunn (even if the content of
the calls, when contact was made, consisted of professions of love and pleas
for forgiveness), and that she made repeated telephone communications[8]
reasonably likely to harass, alarm, annoy, abuse, torment, embarrass, or offend
Chunn.  The evidence is sufficient to
support the trial courts judgment.  Lees
second point of error is overruled.

            We
affirm the trial courts judgment.   

 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          December 30, 2010

Date Decided:             January 14, 2011

 

Do Not Publish











[1]Tex. Penal Code Ann. § 42.07 (Vernon
2003).

 





[2]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Govt Code Ann. § 73.001
(Vernon 2005).  We are unaware of any
conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex. R. App. P. 41.3.





[3]The
record does not indicate when these messages were left.  The five messages appear in two files on the
compact disc.  The first file is a single
message; at the beginning of this message, an automated voice states the length
of the message and reads a time and date of 11:07 a.m., on August 11,
2009.  The other file contains five
messages which play one after another. 
At the beginning of the messages, the automated voice says 3:20 p.m.,
September 29, 2009.  From witness
testimony, it seems that William or Teresa Chunn brought their cell phone to
Detective Stubblefield, who transferred those messages to his computer or
recorded them as the messages were played for him.  





[4]Earlier
this year, the Texas Court of Criminal Appeals found Section 42.07(a)(4) did
not implicate the free speech guarantees of the First Amendment, and the
statute was not unconstitutionally vague on its face.  Scott v. State, 322 S.W.3d
662, 66970 (Tex. Crim. App. 2010). 





[5]If
Lee is complaining about the sufficiency of the evidence to prove intent, it is
an oft-cited tenet of criminal law that intent may be inferred from ones acts or
words.  Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).  Based on the number of calls and messages and
the span of time over which they occurred, and evidence Lee was told on many
occasions by the Chunns and police to cease her attempts to contact Chunn,
there was ample evidence from which the trier of fact could find evidence of
Lees intent.  This contention is
addressed in Lees second point of error. 






[6]Lee
then goes on to claim there is insufficient evidence to support a finding the
voice messages were meant to annoy, alarm, abuse, torment, embarrass, or offend
the recipient, as those terms were discussed in Scott.  See Scott, 322 S.W.3d at
669 n.13.  A challenge to the sufficiency
of the evidence is different from a claim the statute is vague as applied to
Lee.  Regardless of how we construe what
is arguably a multifarious point of error, Lee has not explained how, much less
demonstrated, that Section 42.07 of the Texas Penal Code is vague as applied to
her.  





[7]This
test is used for bench trials as well as jury trials.  Malik,
953 S.W.2d at 240.





[8]The
Texas Court of Criminal Appeals in Scott
concluded text of Section 42.07(a)(4) suggests that it covers ordinary voice
(and therefore voice mail) communication involving an ordinary telephone.  Scott,
322 S.W.3d at 668.  Lee does not question
whether the use of voice messages in the charging instruments alleges an
offense under Section 42.07(a)(4).