

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00893-CR

Ryan Stephen **KIDD**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR7803
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:  Sandee Bryan Marion, Chief Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: September 4, 2019

AFFIRMED

Ryan Stephen Kidd was convicted by a jury of two counts of the offense of sexual performance by a child, and the trial court entered a separate judgment on each count. On appeal, Kidd challenges the sufficiency of the evidence to support his convictions and also asserts the trial court erred in allowing extraneous offense evidence to be presented to the jury. We affirm the trial court's judgments.

BACKGROUND

Kidd was charged with two counts of the offense of sexual performance by a child as defined by section 43.25 of the Texas Penal Code ("Code"). In the first count, he was charged with inducing A.B., a child younger than 18 years of age, to engage in sexual conduct and a sexual performance by video recording her engaging in simulated sexual intercourse. In the second count, he was charged with promoting a performance that includes sexual conduct by A.B. by posting on social media a video recording of A.B. engaging in simulated sexual intercourse.

A.B.'s mother testified A.B. was born on September 27, 2000. In late November of 2015, A.B. ran away from home. A.B. was returned home in February of 2016, after A.B.'s mother was contacted by law enforcement who had found A.B. high on drugs and with a felon involved in sex trafficking. After she was returned home, A.B. ran away again in March of 2016. A.B.'s behavior of running away, returning for a short time, and running away again lasted for about a year. A.B.'s mother believed the behavior was related to drug use because she once picked A.B. up from a hospital where A.B. was "strung up on methamphetamine and other drugs." Throughout the course of the year, A.B.'s mother sought help from CPS and law enforcement. At some point, A.B.'s mother received information that A.B.'s photographs were posted to Kidd's social media account. A.B.'s mother identified State's Exhibit 1 as a video of A.B. when she was fifteen. Eventually, in the later part of 2016, A.B. was placed in a lockdown facility by CPS for treatment for her drug issues and for habitually running away. She remained in CPS custody until she turned eighteen.

Officer Christopher Johnson testified he was on a task force targeting human trafficking when he came into contact with A.B.'s mother around March of 2017. At that time, A.B. was in the lockdown facility. A.B.'s mother told him she had been told videos were posted of A.B. involved in sex with multiple men, and Kidd, who was believed to be A.B.'s boyfriend, was asking if anyone was interested in having sex with A.B. for money. Officer Johnson looked at Kidd's

social media account which was open to the public. Although he did not find the types of videos A.B.'s mother described, he did find State's Exhibit 1 which raised concerns. Officer Johnson sent a preservation letter to Facebook identifying the account by Kidd's name, date of birth (January 9, 1994), and unique page ID number. Officer Johnson then obtained a search warrant for the contents of the Facebook account which showed Kidd as the owner of the account. Facebook emailed the contents to Officer Johnson who saved it on a CD. Officer Johnson located State's Exhibit 1 in the contents of the Facebook account and described the video as a compilation of videos edited together. Officer Johnson testified State's Exhibit 1 was recorded by Kidd because his voice is in the background on parts of the video and he included himself in other parts of the video. Officer Johnson and another officer attempted to interview A.B. in March of 2017 about the information they had gathered, but she was not ready to talk about it.

During trial, after discussions between the trial court and the attorneys regarding the redaction of State's Exhibit 1, Officer Johnson was subsequently recalled by the State and identified State's Exhibit 1C as a redacted version of State's Exhibit 1. State's Exhibit 1C was then admitted into evidence and played for the jury. Officer Johnson also identified State's Exhibits 11, 12, and 13 as messages from Kidd to A.B. that were posted on Kidd's Facebook page. In Exhibit 11, Kidd expresses concern about A.B. "mess[ing] around with anyone" else. In Exhibit 12, Kidd asks A.B. to make a video of her playing with a slang word for her private area and send it to him and states he is asking because "your [sic] my girl you supposed to do that." Finally, in Exhibit 13, Kidd tells A.B. he needs her, misses her, and loves her.

On cross-examination, Officer Johnson testified both he and another officer forwarded the case to the district attorney because they believed the video established the offense of sexual performance by a child. When asked about the manner in which the offense was charged in the

indictment, i.e., simulated sexual intercourse, Officer Johnson testified the video did not show "a simulation of a male penis entering a female vagina."

After the State rested, defense counsel called Justin McKay, a private investigator, as a witness. McKay testified A.B. was involved in a relationship with Kidd from March or April of 2016 to June or July of 2016. McKay characterized the video of A.B. as "a girl emulating dances that you see pretty frequently in pop culture," particularly a dance known as "twerking." McKay prepared a video of different people "twerking" on various television programs which was admitted into evidence and played for the jury. McKay further testified "twerking" occurs at school dances and underage dance clubs, and videos of "twerking" are posted on social media and on the internet. McKay testified the video of A.B. did not show "simulated penetration."

After hearing all of the evidence, the jury found Kidd guilty on both counts, and the trial court sentenced him to eight years' imprisonment. Kidd appeals.

## SUFFICIENCY

In his first issue, Kidd challenges the sufficiency of the evidence to support his convictions.

"When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This standard requires the appellate court to defer 'to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id*. (quoting *Jackson*, 443 U.S. at 319).

Kidd first contends that the evidence did not establish he induced A.B. to engage in the conduct in the video. The term "induce" is not defined in section 43.25 of the Code. "Terms not defined in a statute are to be given their plain and ordinary meaning." *Henley v. State*, 493 S.W.3d

77, 89 (Tex. Crim. App. 2016). As used in section 43.25, the term "induce" has been construed by the courts to mean "to move and lead by persuasion or influence" and "to bring about by influence." *Bell v. State*, 326 S.W.3d 716, 720 (Tex. App.—Dallas 2010, pet. dism'd, untimely filed); *Dornbusch v. State*, 156 S.W.3d 859, 866 (Tex. App.—Corpus Christi 2005, pet. ref'd). As the State notes in its brief, the evidence established Kidd was recording the video, and he can be heard on the video telling A.B. she is the "party" and directing her to "hump." This evidence is sufficient to support the jury's finding that Kidd induced A.B. to engage in the conduct by persuading or influencing her.

Kidd next contends the evidence is insufficient to show A.B.'s conduct in the video is "simulated sexual intercourse" as charged in the indictment. Section 43.25 defines "simulated" as "the explicit depiction of sexual conduct that creates the appearance of actual sexual conduct and during which a person engaging in the conduct exhibits any uncovered portion of the breasts, genitals, or buttocks." TEX. PENAL CODE ANN. § 43.25(a)(6). The jury charge defined "sexual intercourse" as "any penetration of the female sex organ by the male sex organ." Having reviewed State's Exhibit 1C and given Kidd's direction to A.B. to "hump," we hold the evidence is sufficient to support the jury's finding that A.B. engaged in "explicit depiction of sexual conduct that create[d] the appearance of actual sexual [intercourse]" and A.B. exhibited an uncovered portion of her buttocks while engaging in the foregoing conduct. Accordingly, the evidence is sufficient to support the jury's finding that A.B.'s conduct constituted "simulated sexual intercourse."

Kidd's first issue is overruled.

### STATE'S EXHIBITS 11, 12, AND 13

In his second issue, Kidd contends the trial court erred in allowing State's Exhibits 11, 12, and 13 to be presented to the jury. In the portion of his brief setting forth the summary of his argument, Kidd contends "the trial court erred in not providing a constitutionally required hearing

to determine the threshold admissibility of extraneous acts" and admitted the evidence "without following the procedures laid out by the Court of Criminal Appeals." In the argument section of his brief, Kidd cites *Harrell v. State*, 884 S.W.2d 154, 157-59 (Tex. Crim. App. 1994) as "set[ting] out very clearly the requirement that the trial court as the gatekeeper for admissibility must follow."

As the State notes in its brief, defense counsel did not make any objection to the nature of the hearing the trial court conducted in ruling on the admissibility of the evidence. Instead, defense counsel objected that the exhibits were not relevant and were more prejudicial than probative. In order to preserve a complaint for appellate review, the objection at trial must comport with the complaint on appeal. *Hallmark v. State*, 541 S.W.3d 167, 171 (Tex. Crim. App. 2017). Because defense counsel's objection in the trial court related to relevancy and prejudice and not as asserted on appeal, Kidd's second issue is not preserved for our review.

Even if Kidd's second issue was preserved for our review, as the State also notes in its brief, the decision in *Harrell* preceded the adoption of article 38.37 of the Texas Code of Criminal Procedure in 1995 which governs the admissibility of extraneous offenses or acts in a prosecution of a defendant for the offense of sexual performance by a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37. Article 38.37, § 2-a provides that before introducing the extraneous offense evidence, the trial judge must:

> (1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and
>
> (2) conduct a hearing out of the presence of the jury for that purpose.

*Id*. at art. 38.37, § 2-a.

In this case, when the State sought to introduce State's Exhibits 11, 12, and 13, the trial court excused the jury and conducted a hearing on the admissibility of the exhibits. Officer Johnson identified the exhibits as messages from Kidd to A.B. that were posted on the Facebook

account about which Officer Johnson had previously testified. Officer Johnson further stated the messages from Kidd contained the same Facebook account number previously shown to be Kidd's account number.

We hold the record establishes the trial court complied with article 38.37, § 2-a. The trial judge held a hearing out of the presence of the jury, and Officer Johnson's testimony at that hearing established the messages in question were sent by Kidd to A.B. Therefore, to the extent the content of the messages constituted separate offenses, Officer Johnson's testimony was adequate to support a finding by the jury that Kidd committed those separate offenses beyond a reasonable doubt. Accordingly, even if Kidd's second issue had been preserved for our review, we would have overruled it.

## CONCLUSION

The trial court's judgments are affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH